[No. 13914. In Bank. — March 20, 1891.]

NANNIE ESREY, Respondent, *v.* THE SOUTHERN PACIFIC COMPANY, Appellant.

Negligence — Knowledge of Danger — Duty of Railroad Company. — A railroad company, if not aware of the position of danger of a person upon or near its track, owes such person no duty to take any particular precaution, and is not guilty of negligence if injury results from the running of its cars in the ordinary way; but if the danger is known to the employees of the company, they are bound to use care, and if they discovered it in time to have stopped the train and to have avoided the accident, they are guilty of negligence in failing to do so.

Id. — Contributory Negligence — Ordinary Negligence of Defendant. — Where the negligence of the plaintiff contributes directly and proximately to the injury, there can be no recovery, notwithstanding the negligence of the defendant, if the defendant's negligence is not willful or wanton.

Id. — STANDING BETWEEN PLATFORM AND CARS. — A person standing within a space of three feet between a railroad track and a raised platform while a train passes, thinking that there was sufficient room to stand without being struck by the cars, and who is injured by the passing train, is guilty of contributing negligence, and cannot recover for the injuries so received, notwithstanding his dangerous position was seen by the employees of the railroad company, if the complaint does not charge and the evidence does not show that the negligence of the railroad company was willful or wanton.

APPEAL from a judgment of the Superior Court of Tulare County, and from an order denying a new trial.

The facts are stated in the opinion.

*E. L. Craig, Horace Hawes,* and *P. D. Wigginton,* for Appellant.

One who sees a train approaching, and, by a nice calculation, determines that he has time to pass over in advance of it, is contributorily negligent if he makes the attempt and is injured. (Bishop on Non-Contract Law, sec. 1045; *Maryland* v. *P. & L. E. R. R. Co.,* 123 Pa. St. 487; 10 Am. St. Rep. 541; *Hearne* v. *S. P. R. R. Co.,* 50 Cal. 484; *Trousclair* v. *Steamship Co.,* 80 Cal. 524–525.) The agents of defendant were not called upon for the highest degree of diligence, but only for ordinary care; and even should it appear in judging afterward that something different might perhaps have been better, it would not make the case against defendant. (*Williams* v. *S. P. R. R. Co.,* 72 Cal. 121–123; *Needham* v. *S. F. & S. J. R. R. Co.,* 37 Cal. 412, 422, 423.) If plaintiff looked, she saw; and having age and faculties to understand the dangers, is charged with a knowledge of them, and was bound to act upon that knowledge as a prudent and cautious person would under the circumstances. Her failure so to act was negligence, which, notwithstanding the negligence of defendant, the law regards as such contributory cause on her part as will make the injury her own misfortune and relieve the other party from liability therefor. (*Glascock* v. *C. P. R. R. Co.,* 73 Cal. 138, 141;

*Hearne* v. *S. P. R. R. Co.*, 50 Cal. 484; *Flemming* v. *W. P. R. R. Co.*, 49 Cal. 255, 258.)

*Justin Jacobs,* and *W. A. Gray,* for Respondent.

A person in time of imminent danger is not negligent because he does not take every precaution that a careful calculation afterwards shows he might have taken. (*Karr* v. *Parks,* 40 Cal. 188; *Robinson* v. *W. P. R. R. Co.,* 48 Cal. 421; *O'Callaghan* v. *Bode,* 84 Cal. 494.) Contributory negligence of the plaintiff will not prevent recovery, if such negligence be known to the party causing the injury, and he could have avoided the injury by the use of reasonable care. (*Romick* v. *Chicago etc. R. R. Co.* 62 Iowa, 167; Cooley on Torts, 1st ed., 674; *Richmond* v. *S. V. R. R. Co.,* 18 Cal. 351; *Robinson* v. *W. P. R. R. Co.,* 48 Cal. 409, 423; *Williams* v. *S. P. R. R. Co.,* 72 Cal. 120.) The act of starting the train, knowing the plaintiff was in a dangerous position, was willful and wanton negligence; at least it indicated that degree of indifference to the rights of others which may justly be characterized as recklessness, and therefore the doctrine of contributory negligence does not apply. (Cooley on Torts, 1st ed., 674; *Kline* v. *C. P. R. R. Co.,* 37 Cal. 406; 99 Am. Dec. 282; *Flynn* v. *S. F. & S. J. R. R. Co.,* 40 Cal. 14; *Seigel* v. *Eisen,* 41 Cal. 109; *Robinson* v. *W. P. R. R. Co.,* 48 Cal. 423; *Fernandes* v. *Sac. R. R. Co.,* 52 Cal. 53; *Meeks* v. *S. P. R. R. Co.,* 56 Cal. 513; 38 Am. Rep. 67; *Tennenbrock* v. *S. P. R. R. Co.,* 59 Cal. 271; *Strong* v. *S. & P. R. R. Co.,* 61 Cal. 326; *Nehrbas* v. *C. P. R. R. Co.,* 62 Cal. 320; *McQuilken* v. *C. P. R. R. Co.,* 64 Cal. 463; *Dufour* v. *C. P. R. R. Co.,* 67 Cal. 319.) Whether the plaintiff was guilty of such contributory negligence as should defeat her recovery, and whether defendant was guilty of wanton recklessness, was properly left by the court to the jury to determine. (Field on Damages, 181; *Schierhold* v. *N. B. & M. R. R. Co.,* 40 Cal. 447; *Fernandes* v. *Sac. R. R. Co.,* 52 Cal. 45; *Jamison* v. *R. R. Co.,* 55 Cal. 593; *McKeever* v. *M. S. R. R. Co.,* 59 Cal.

294; *Nehrbas* v. *C. P. R. R. Co.*, 62 Cal. 320; *Seigel* v. *Eisen*, 41 Cal. 109.)

VANCLIEF, C. — This was an action for damages for personal injuries. The plaintiff had a verdict and judgment for five thousand dollars, and the defendant appeals from the judgment, and an order denying its motion for a new trial.

The following are the material facts: The accident occurred at Leemore, a small town between Tulare and Huron, on the afternoon of February 13, 1889. The plaintiff had gone to the depot with a friend, one Miss Furnish, to bid good by to an acquaintance, one Mrs. Shively, who took the freight train which passed Leemore about that time. The general features of the locality are as follows: The main track ran east and west. Almost parallel with it, and a few feet to the south, was a side-switch which ran alongside a platform about four feet high and came into the main track a little farther to the east. The platform was about one hundred feet long, and was about three feet from the first rail of the side-switch. The train was headed towards the east, its forward part, consisting of the engine and some flat-cars, uncoupled from the caboose (which was left standing on the main track opposite the platform) for the purpose of taking on some box-cars which were on the western end of the side-switch.

Mrs. Shively got into the caboose, and the plaintiff and Miss Furnish, having taken leave of her, started to go around by the western end of the platform to the street, which crossed the track there. They changed their minds, however, and went towards the eastern end. By this time the engine and the platform-cars were backing down the side-switch, and plaintiff was aware of the fact. She says: "I knew the train was switching before I crossed, but I thought I had time to escape any danger." "And I thought that the space be-

tween the cars, — I had never paid any particular attention to that, — and I thought that the space between the cars and the platform would be wide enough that I could walk right along without being injured in the least." She " crossed the switch just at the end of the box-cars." Miss Furnish did not cross the switch. In this regard plaintiff says: "At this time Miss Furnish was with me. She did not cross the track with me. I told her I thought we had ample time to get across. I don't know what her answer was exactly. I know she did n't come. I could not say whether she said anything to me about going, or that there was not time to cross the track before the cars came. There was no time for talking. She might have spoke, but I did not hear." Miss Furnish says that she did not cross, because she was afraid.

There were two brakemen employed on the train. One of them (Ferguson) was on the ground near the box-car, for the purpose of signaling the engineer. The other (Williams) was on the end of the flat-car, but got down to make the coupling when the end of the train neared the box-car. He says: "A young lady ran in between the box-car and the flat-car, and I told her to 'get out of there, or you will get hurt,' and she said, 'I am not afraid.'" The fact that he did say this is corroborated by Miss Furnish, by one Benton, "an engineer and pumper" about the station, and by Mrs. Shively. The plaintiff says that if the brakeman spoke to her she did not hear him, and it is assumed that her statement in this regard is true.

After she had crossed the switch, she found that she had not time to get around the platform before the end of the train reached her, so she stood with her back against the platform. While standing in this position, the flat-cars passed her, but did not touch her, and she does not seem to have been alarmed. In this regard her testimony was as follows:—

"Q. The brakeman at this time was about six feet from you. Could you not have spoken to the brakeman, and asked him to hold until you could get around the corner? A. Yes, sir; I could.

"Q. Did you attempt to? A. No, sir.

"Q. Did you do anything but press back against the platform? A. I did not, because I thought I was perfectly safe.

The same sense of security appears from her conversation with Mrs. Shively. The latter says: "I looked out the caboose window and saw the plaintiff standing between the flat-car and the platform. I told her I thought it was a dangerous place where she was. She said she was all right"; and the plaintiff admits that this conversation occurred.

The defendant's employees evidently shared plaintiff's opinion that there was no danger; for they paid no further attention to her. The brakeman Williams says: "I went about my work, made the coupling, and Mr. Ferguson, the other brakeman, gave the signal to go ahead. When he gave the signal to go ahead, the girl was out of my sight. I did not see her. She must have gone behind the box-car, or I would have seen her." The engineer says he did not see her when he got the signal. And the fireman, who had seen her cross the switch, says: "She disappeared from my sight; I cannot tell which way she went." And he went on ringing the bell without troubling himself further about the matter.

The plaintiff's account does not differ materially from this. Her testimony is as follows:—

"Q. You did not ask either brakeman to stop the train? A. No sir.

"Q. But simply pressed back against the platform? A. I did.

"Q. State whether or not you are positive that both these brakemen saw you. A. I am positive.

"Q. I ask you now with reference to that. Do you mean to say at this time that both of these brakemen were looking at you at the time the car was coupled and you were standing here, pressed up against the platform? A. I mean to say that both could have seen me.

"Q. You mean to say that both could have seen you? A. Yes, sir.

"Q. You don't mean to swear positively that they were both looking at you at that time? A. I did n't say they were looking at me at that time, but I know positively they both saw me. They saw me standing there.

"Q. At some time? A. At some time.

"Q. You don't mean, then, however, to be understood by the jury that at the time the coupling was made and the signal given to start that both these brakemen were looking at you in this position? A. I could not say they were looking at me just at that time, but I am positive they both saw me.

"Q. As I understand, you are positive that while you were standing there, and the train was coming in, that they saw you over on that side of the car? A. Yes, sir."

These extracts show clearly enough that the employees on the train saw the plaintiff go in between the flat-cars and the box-cars, and saw her standing up against the platform as the flat-cars passed her, but paid no further attention to her, apparently sharing her belief that she was safe.

But neither she nor they seem to have thought of the fact that the box-cars were wider than the flat-cars. She says: "When the cars began to move, I noticed that the box-car was considerably wider than the flat. Then I fully realized my danger. Not until that time." The first box-car struck and crushed her shoulder. Whereupon she threw herself upon the ground and the train passed without injuring her further.

All of the foregoing facts appear without substantial contradiction. The only conflict is as to whether she heard the brakemen tell her not to go in there, and for the purpose of the opinion it is assumed that she did not hear him.

Upon these facts, it seems clear that her own negligence contributed directly and proximately to the injury. She had voluntarily placed herself in a dangerous position,—a position in which, as it turned out, she would be almost certain to be injured by the running of the cars in the ordinary way, and from which her more prudent companion shrank back in fear. Now, if the defendant's employees had not seen her position of danger, the defendant would have owed her no duty to take any particular precaution, and consequently would not have been guilty of negligence. (*Toomey* v. *Southern P. R. R. Co.*, 86 Cal. 374.) But the defendant's employees saw her in time to have avoided the accident, and hence were bound to use care. The brakemen ought to have stopped the train, and if necessary, compelled her to get out of harm's way. They did not do this; and hence were guilty of negligence. But the complaint does not charge that there was anything willful or wanton against the defendant. It simply alleges that the defendant "carelessly and negligently" ran one of its cars against the plaintiff; and this is all that the evidence shows. For this negligence on the part of the defendant, plaintiff would have had a cause of action if there had been no contributory negligence on her part. But the rule is, that wherever the negligence of the plaintiff contributed directly and proximately to the injury, there can be no recovery. Such negligence must have contributed to the injury, not remotely, but directly and proximately. (*Needham* v. *S. F. & S. J. R. R. Co.*, 37 Cal. 409; *Kline* v. *C. P. R. R. Co.*, 37 Cal. 406; 99 Am. Dec. 282; *Fernandes* v. *Sac. R. R. Co.*, 52 Cal. 53.) But I think that such was the case here. The plaintiff's negligence was certainly not remote in point of time.

She voluntarily went into a dangerous place, where she had no right to be, and the brakemen very foolishly allowed her to do so. The fatal mistake after this was in not thinking of the fact that the box-cars were wider than the flat-cars; and this was evidently shared by all the parties. The plaintiff probably was correct in the opinion which she expressed to Mrs. Shively shortly after the accident. "She said it was some of her foolishness; it was her own fault. I asked her, 'What in the world did you go in there for?' She said, 'some of her own foolishness.'"

I think the judgment and order appealed from should be reversed, and the cause remanded for a new trial.

BELCHER, C., and FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order appealed from are reversed, and the cause remanded for a new trial.

BEATTY, C. J., dissented.

Rehearing denied.