[Civ. No. 4099. First Appellate District, Division Two.—March 6, 1922.]

## ERIE G. SCHOOLEY, as Administratrix, etc., Respondent, v. FRESNO TRACTION COMPANY (a Corporation), Appellant.

[1] NEGLIGENCE—DEATH OF PEDESTRIAN—COLLISION WITH STREET-CAR—CONTRIBUTORY NEGLIGENCE—EVIDENCE.—In this action for the death of a pedestrian caused by the alleged negligence of the defendant in the operation of its street railway, the testimony offered on behalf of the plaintiff shows beyond question that the deceased was negligent in stepping upon the tracks directly in front of an on-coming car, which was plainly in view at the time he stepped upon the track if he had chosen to glance in its direction.

[2] ID. — STEPPING IN FRONT OF APPROACHING CAR — INFERENCE OF CONTRIBUTORY NEGLIGENCE.—Where a foot-passenger walks or steps directly in front of an approaching car and is struck the instant he sets his foot between the rails there is but one inference that can reasonably be drawn from that fact, and that is, the inference of contributory negligence.

[3] ID.—CROSSING OF CAR TRACKS BY PEDESTRIAN—DIAGONAL ROUTE—DEGREE OF CARE.—A pedestrian undertaking to cross street-car tracks by a diagonal route at a place other than a regular crossing must exercise greater care than if he were attempting to cross directly over the street upon a regular sidewalk crossing.

[4] ID.—ACTION FOR DEATH—EVIDENCE—BURDEN OF PROOF.—In an action for the death of plaintiff's intestate alleged to have been caused by defendant's negligence, it is incumbent upon plaintiff to make out a *prima facie* case in his own favor showing that the damages claimed resulted from the defendant's negligence, and where it affirmatively appears from his own evidence that deceased's want of due prudence was the proximate cause of the injury plaintiff cannot recover.

[5] ID.—COMPARATIVE NEGLIGENCE—LAW NOT RECOGNIZED.—In such an action the question of contributory negligence must be deter-

1. Failure of pedestrian crossing street railway track to stop, look, and listen, as negligence, notes, 3 Ann. Cas. 334; Ann. Cas. 1915B, 690.

Duty of motorman to anticipate person's attempt to cross street railway track, note, Ann. Cas. 1915A, 216.

Attempting to cross in front of observed street-car as contributory negligence, note, L. R. A. 1917C, 692.

mined without regard to any negligence on the part of the defendant, since the law of comparative negligence is not recognized by the courts of this state.

[6] ID.—DEFECTIVE FENDERS AND CAR APPLIANCES—WHEN IMMATERIAL.—Where in an action for death from being run over by a street-car it conclusively appeared from all the evidence that the negligence of the deceased was the proximate cause of his death, the question whether the fenders and safety appliances on the car were reasonably well suited for the purposes for which they were intended was immaterial.

[7] ID.—LIABILITY OF DEFENDANT—LACK OF SUITABLE CAR FENDERS—ERRONEOUS INSTRUCTION.—An instruction in such action that it was the duty of the jury to find a verdict in favor of the plaintiff notwithstanding a finding of contributory negligence, if it was also found that the deceased would not have been killed had the car been equipped with a suitable fender, was reversible error.

'APPEAL from a judgment of the Superior Court of Fresno County. D. A. Cashin, Judge. Reversed.

The facts are stated in the opinion of the court.

Everts, Ewing & Wild and T. M. Stuart for Appellant.

Harris & Hayhurst and Henry Hawson for Respondent.

LANGDON, P. J.—This is an appeal by the defendant from a judgment against it for thirty thousand dollars. The plaintiff is the administratrix of the estate of C. P. Schooley, deceased, and sues to recover for the death of her intestate caused by the alleged negligence of the defendant in the operation of its street railway.

The complaint charged that deceased was run over and killed by one of defendant's street-cars at a point near the westerly intersection of M and Tulare Streets, in the city of Fresno, and alleged that his death was caused by defendant's negligence. The alleged negligent acts were specified in six different subparagraphs, substantially as follows:

1. Excessive rate of speed of the street-car. 2. Motorman failed to keep a lookout and hence failed to discover the deceased upon the track in time to avoid running over him and failed to use proper care in stopping the car after discovering deceased's peril. 3. The brakes and other safety appliances upon the car used for stopping same were worn

and defective.  4. Car was equipped with an old, defective, out-of-date, insufficient, and inadequate front fender, on account whereof the deceased was not protected but instead was run over by the wheels of the car.  5. Car was not equipped with an automatic fender such as was in general use, by reason whereof the deceased was run over by the front wheels of the car.  6. Car was not equipped with up-to-date automatic air-brakes such as ordinarily used, on account whereof the motorman was unable to stop the car.

The defendant denied each specification of negligence and alleged that the collision and resulting death of the deceased were brought about by his own contributory negligence.

The place of the collision is in the business district of the city of Fresno and the point where Schooley was attempting to walk across the track was not upon a regular crossing, nor at a place provided for or used by pedestrians in crossing the street-car tracks.  Tulare Street is one of the principal business streets of Fresno, running generally east and west.  It is crossed at right angles by K Street, L Street, and M Street, in the order named, from west to east.  The deceased resided on the easterly side of M Street and at the time of the collision was on an errand from his home to a grocery-store located on the southerly side of Tulare Street near the center of the block between L and M Streets, and was pursuing a diagonal short-cut in a southwesterly direction from his home to the store.

The defendant operates two street-car tracks on Tulare Street, east-bound cars running over the southerly track or "toward the Santa Fe depot" and west-bound cars over the northerly track or "toward the Southern Pacific depot."  The deceased, while attempting to cross Tulare Street in a diagonal direction at some point between the crossing on M Street and an alley between L and M Streets, was struck in the back, a little to the left side, by a west-bound car which came from his rear.  At the time he was struck he was upon the first track that he attempted to cross.  The evidence is that he was struck by this car immediately after he stepped upon the track.  True, one witness stated that deceased was approximately in the middle of this first track; the others stated that he was just over the first rail, but this variance is of slight importance because the approximate width of a street-

car track being a matter of common knowledge, it is plain that whether deceased was in about the middle of the track or just over the edge of the first rail when he was struck, he must have stepped over the first rail he reached immediately in front of the approaching street-car. In other words, he stepped from a place of safety into imminent danger. Traffic was heavy on the street at the time and place of the collision. The deceased was a man of the age of forty-four years and had been employed as a boilermaker for twenty years. The plaintiff, who was his wife, testified, upon being examined as to his hearing, that it was better than the average boilermaker's. He had, however, sustained an injury to his left eye. This was caused by particles of steel getting into his eye in the course of his work, which had seriously impaired the sight of this eye. This eye was the one nearest the street-car which struck him. As deceased stepped over the rail, his head and face were away from the car and the car struck him in the back, slightly to the left side. These facts are agreed upon by all the witnesses who testified regarding them.

We shall now discuss in some detail the proof made by plaintiff in support of her action. The witness Longuevan testified that he was riding on "the front platform of the east-bound car, and noticed the car coming from the east, going west with a man walking diagonally toward the street-car track, that is, the track on which the west-bound car was running. After taking, I should judge, six or eight steps, possibly more and may have been a few less, he got approximately in the middle of the car track, and was struck in the back by the street-car, knocking him forward on his face, and apparently rolled him up like a ball, until he got underneath the front fender, and it appeared to me that he had also gotten partly under the wheel-guard. . . . In the meantime, the car had been brought to a halt and likewise our car had been brought to a halt and I got off." In response to further questions, this witness testified that he judged the car which struck deceased was going about fifteen miles an hour; that he thought the car ran between twenty and thirty feet after striking deceased; that when witness first saw deceased, deceased was from six to eight feet from the track on which he was struck and was walking diagonally; that he saw him go under the front fender and

apparently he went under the wheel-guard, but as to this latter fact the witness was clearly unable to give any satisfactory information, as he did not go near the scene of the accident after the car stopped, but left the car on which he was riding and went home, not desiring to see more of this ghastly occurrence. This witness admitted that he had stated at the coroner's inquest, on the day after the accident, that he was unable to judge the speed at which the car was going, and on cross-examination he admitted that deceased had just gotten over the first rail when he was struck.

The next witness was J. P. Langston, who testified that his business was "air brakeman and safety appliance" and that he was employed by the Santa Fe. His testimony was confined entirely to measurements regarding the fenders on the car and descriptions of these appliances which we shall not consider here, for the reasons which will later appear.

Frank Digioia was next produced on behalf of plaintiff. He was the conductor on the car which struck Schooley. He stated the car was going at about six or seven miles an hour; that the car came to a sudden stop; that he got off the car and found Mr. Schooley lying flat on his back; that he was in between the slat-fender and the pilot-board. It might be stated here that the car was equipped with two safety appliances or fenders, one a so-called "slat-apron" in front, and wheel-guards to prevent bodies from being mangled by the wheels of the car. A detailed description of these appliances is unnecessary here under our view of the law governing this case. This last witness stated that the body had gotten under the slat-apron but had not passed the wheel-guard.

The witness Peterson testified that he was on the front platform of the car which struck Schooley; that he saw the man when he was just stepping on the car tracks; that the car was going about twelve or fifteen miles an hour; that the man was crossing the track diagonally and was struck in the side; that he was walking at an ordinary gait. This witness did state that when he saw deceased after the accident the body was partly under the car, but he admitted that at the coroner's inquest, the day after the accident, he had testified that the body was not under the car. It also appears that immediately after the accident this witness made a statement in his own handwriting to the

defendant company. He admitted on the stand that in that statement he had written that the accident was due to the "carelessness of the victim" and that the deceased was entirely at fault.

The physician who examined the body of deceased at the coroner's office testified for plaintiff and stated that he had found "lacerations on the face, a broken jaw and several ribs broken; that his chest was crushed in and the jugular vein in the neck punctured by one of the ribs." That the punctured jugular vein caused deceased to bleed to death. The balance of the testimony for plaintiff was that of expert witnesses and had to do solely with the different kinds of fenders in use upon street-cars. The substance of this testimony was that "Eclipse" and "Worcester" fenders are projecting fenders and are the ones in common use in Los Angeles and San Francisco. These were described in detail and photographs introduced. Upon cross-examination it was admitted that wheel-guard fenders, which was the type used upon the cars of the defendant, were in use to some extent in Venice, Pomona, Long Beach, San Bernardino, Santa Monica, Riverside, Redlands, Pasadena, San Francisco, and other places.

[1] The foregoing is the substance of the testimony offered on behalf of plaintiff. That testimony shows beyond question that the deceased was negligent in stepping upon the tracks of the defendant company, directly in front of an on-coming car, which was plainly in view at the time he stepped upon the track if deceased had chosen to glance in its direction. We think that the negligence of deceased is not only overwhelmingly established by a perusal of the entire record, but it is sufficiently established upon an examination of plaintiff's own evidence. Taking the highest estimate of the speed of the car—fifteen miles an hour—it is plain that even if deceased was not struck until about the time he reached the middle of the track (although the testimony strongly leads to the conclusion that he was struck immediately upon stepping over the first rail) he must have stepped over the rail into a place of danger when the car was practically upon him and at a time when it was too late for the motorman to have stopped the car or for any appliance to have saved a dangerous collision. Surely, under the language of the cases hereafter cited, and under any ra-

tional system of law, defendant could not be charged with a duty to anticipate that anyone would suddenly step from a place of safety on to the car tracks in the middle of a block, directly in front of an approaching street-car.

[2]    We think such gross negligence on the part of a pedestrian will bar all right of recovery for any injuries which he may sustain. It is said in 25 R. C. L., p. 1285: "However, where a foot-passenger walks or steps directly in front of an approaching car and is struck the instant he sets his foot between the rails there is but one inference that can reasonably be drawn from that fact, that is, the inference of contributory negligence." Cited in support of this doctrine, among other cases, is the case of *Driscoll* v. *Market Street Cable Ry. Co.*, 97 Cal. 553 [33 Am. St. Rep. 203, 32 Pac. 591]. In that case it was said: "While, therefore, the owners of these railroads [street railroads] are to be held to due care in the management of their lines, they, when exercising such care, are not responsible in damages to a person who, in a careless, or reckless or absent-minded way, walks suddenly in front of a moving car and is injured before there is time to stop it. *The person in charge of a car with a clear track before him has a right to assume that people will not suddenly undertake to cross in front of it;* otherwise he could not make any headway, and no street-car line could be successfully operated, either for the profit of the owner or the convenience of the public. And the general rule is, that where the negligence of the injured party is a contributing proximate cause of the accident, he cannot recover damages."

In the Driscoll case it is pointed out that the question of whether or not the negligence of the pedestrian did contribute to his injury is generally one upon which there is conflicting evidence, which makes it difficult for a railroad company which was itself guilty of negligence at the time of the accident to relieve itself from an unfavorable verdict. We recognize this rule, and so we have discussed herein only the plaintiff's evidence upon this question of deceased's negligence. Quite apart from the testimony offered by defendant, some of it from disinterested witnesses, we think it must appear, without conflict, from plaintiff's own evidence, that her intestate was negligent and that such negligence was the proximate cause of his death. Under such

circumstances there can be no recovery. (Sec. 1714, Civ. Code; *Flemming* v. *Western Pac. R. R. Co.,* 49 Cal. 253; *Studer* v. *Southern Pac. Co.,* 121 Cal. 400 [66 Am. St. Rep. 39, 53 Pac. 942]; *Nagle* v. *California S. R. R. Co.,* 88 Cal. 86 [25 Pac. 1106]; *Rudd* v. *Byrnes,* 156 Cal. 640 [20 Ann. Cas. 124, 26 L. R. A. (N. S.) 134, 105 Pac. 957]; *Esrey* v. *Southern Pac. Co.,* 88 Cal. 399 [26 Pac. 211].)

In the case of *Lee* v. *Market Street Ry. Co.,* 135 Cal. 293 [67 Pac. 765], it is said: "That a man under these circumstances should thus heedlessly cross a public street in the middle of the block and know nothing of the approach of a street-car until the moment when it struck him is a demonstration of carelessness and negligence so complete as to require no comment."

[3] It is also well settled in this state that a pedestrian undertaking to cross street-car tracks by a diagonal route at a place other than regular crossing must exercise greater care than if he were attempting to cross directly over the street upon a regular sidewalk crossing. (*Sheldon* v. *James,* 175 Cal. 474 [2 A. L. R. 1493, 166 Pac. 8]; *Scott* v. *San Bernardino etc. Co.,* 152 Cal. 604 [93 Pac. 677]; *Moss* v. *H. R. Boynton Co.,* 44 Cal. App. 474 [186 Pac. 631, 632].) The fact that the place of crossing was on a busy thoroughfare in the heart of a business district required plaintiff's intestate to exercise especial care. (*Davis* v. *Breuner Co.,* 167 Cal. 683 [140 Pac. 586].) Giving to plaintiff's evidence and to the undisputed facts all the value to which they are legally entitled, the inevitable conclusion must be that the deceased did not exercise ordinary care in crossing at a place and under conditions which required of him a greater degree of care than would have been required had he crossed at a regular crossing in a section of the city less subject to travel.

[4] In an action for the death of plaintiff's intestate, alleged to have been caused by defendant's negligence, it is incumbent upon plaintiff to make out a *prima facie* case in his own favor showing that the damages claimed resulted from the defendant's negligence and where it affirmatively appears from his own evidence that deceased's want of due prudence was the proximate cause of the injury plaintiff cannot recover. (*Dufour* v. *Central Pac. R. R. Co.,* 67 Cal. 319 [7 Pac. 769].)     The question of contribu-

tory negligence must be determined without regard to any negligence on the part of the defendant. (*Moss* v. *H. R. Boynton Co.*, 44 Cal. App. 474 [186 Pac. 631], and cases cited therein.)

Under these facts the refusal of the trial court to give, upon the request of the defendant, two instructions stating that the deceased was negligent as a matter of law and could not recover was prejudicial error.

[5] Under our view with reference to the negligence of deceased the question of defendant's negligence becomes immaterial, because the law of comparative negligence which obtains in some states is not recognized by the courts of this state. (*Sego* v. *Southern Pac. Co.*, 137 Cal. 405 [70 Pac. 279]; *Straten* v. *Spencer*, 52 Cal. App. 98 [197 Pac. 540].) But in justice to the defendant it may not be amiss to say that we do not think the record establishes any of the allegations of the complaint respecting negligence on its part. Let us revert for a moment to such allegations. With reference to the speed of the car, it is admitted that the speed limit allowed by law for street-cars at the place in question was sixteen miles an hour. Defendant was well within this limit, according to even the highest estimate placed by plaintiff's witnesses upon the speed of its car. True, as stated by respondent, this legal limit may not be a measure of what was a reasonable speed under all the circumstances. But there is nothing to indicate that the speed at which the car was traveling was not a reasonable rate of speed under the conditions then existing. Its unreasonableness is not established, as contended by respondent, by the fact that the car struck a man stepping suddenly directly in its path. And if this were not true, the matter would then fall within the rule announced in the case of *Davis* v. *Breuner Co.*, 167 Cal. 683 [140 Pac. 586], which held that where the negligence of the plaintiff in not looking both ways before starting to cross a street in a busy thoroughfare in the business district of a city is established, it will bar his recovery notwithstanding the defendant was driving an automobile at a speed in excess of the speed allowed by ordinance. *A fortiori*, there can be no recovery in the present case where the street-car was being operated at a legal rate of speed.

There is no proof that the motorman failed to keep an outlook or that he failed to use proper care in stopping the car after discovering deceased's peril. Indeed, it is plain that if the deceased stepped over the rail and was almost instantly struck, as appears in the present case, then no outlook which the motorman could possibly have kept would have enabled him to stop the car in time to avoid the accident. Deceased was not in a position of peril until he stepped upon the rail and he could not have taken more than a step or two, going at an ordinary gait, before he was struck. Until almost the moment he was struck, then, no outlook would have disclosed him in a position of danger, for he was not in such a position. This negatives any possibility that any failure to keep an outlook, if such there was (and on that matter the evidence is to the contrary), could have contributed to the accident. There is not the slightest evidence that the motorman failed to use proper care in stopping the car after discovering deceased's peril, or that the brakes or other appliances for stopping the car were worn and defective. There is no evidence that the car could have been stopped in a shorter distance nor that any other car otherwise equipped could have been stopped more quickly. Furthermore, there is no proof that the deceased was run over by the wheels of the car. The nearest approach to such proof is in the testimony of a witness who at the time of the accident was on a car going in the other direction, who stated that it *appeared* to him from a distance of about seventy-five feet that the deceased had gotten under the car, but this witness admitted that he did not go nearer to the scene of the accident after the car stopped, but hurried away so as not to see the injured man. His testimony, then, as to what his impression was at that distance is without weight in view of the evidence of several eye-witnesses who saw the position of the body when the car stopped and who testified that the body was not under the wheels nor under the car. It is apparent, then, that the only possible theory for the judgment is that the jury believed the fenders upon the car were improperly constructed and that this condition was the proximate cause of the injury.

[6] Now, if by any course of reasoning, in the light of defendant's evidence on this subject, the jury had been

justified in concluding that the fenders and safety appliances
on defendant's car were not reasonably well suited for the
purpose for which they were intended, nevertheless, we
think it cannot be successfully contended, under the facts
of this case, that this matter was the proximate cause of the
injury and death, for it conclusively appears from all the
evidence that the negligence of deceased was the proximate
cause of his death. (*Craven* v. *Central Pac. R. R. Co.*, 72
Cal. 345 [13 Pac. 878].) If a person, while crossing the
track of a railroad on a public highway, is injured by a
passing train, his negligence, if it contributed at all to the
injuries, contributed directly and proximately. (*Hearne* v.
*Southern Pac. R. R. Co.*, 50 Cal. 482.)

Under such a state of facts, we are unconcerned with
the contradictory opinions of numerous witnesses produced
by both sides as to the relative merits of different types of
fenders or safety appliances. It is admitted that the de-
fendant was under no duty, statutory or under the common
law, to equip its cars with any particular kind of fenders.
But we may go a step further and point out that even if de-
fendant had been violating a statute by the use of the
fenders attached to this car, the presumption of negligence
raised by such unlawful conduct would only furnish ground
for a recovery where it was the proximate cause of the
injury. (*McKune* v. *Santa Clara V. M. & L. Co.*, 110 Cal.
480, 486 [42 Pac. 980]; *Fenn* v. *Clark*, 11 Cal. App. 79, 81
[103 Pac. 944].) We apprehend it would not be contended
that if a pedestrian with murderous intent pushed another
directly in front of a moving car, that the injured person
could recover regardless of the fact that the car was un-
equipped with any safety devices in direct violation of a
statute, or that if one, with suicidal intent, hurled himself
in front of a moving car, that his representatives could re-
cover regardless of the type of fender the car carried,
and the question of the violation by defendant of an ordi-
nance regulating fenders would not change the rule of
law. The present case furnishes but a difference in degree
and not in kind.

[7] Because of the conclusions we have reached regarding
the matters herein discussed, it is unnecessary for us to
discuss all of appellant's specifications of error. We shall
mention merely an error in an instruction, which, together

with the other matters herein discussed, compels a reversal of the judgment. The jury was instructed "that if they find from the evidence in this case that the deceased at the time of the accident and at the time he met his death was guilty of negligence in going upon the track of the street-car, but should they further find that said car at the time was not provided with a suitable fender or appliance placed in front or attached to the trucks of such car or dummy for the purpose of removing and clearing obstructions from the track and preventing any obstacles, obstructions, or persons on the track from getting under such dummy or car and removing the same out of danger or out of the way of such dummy or car and that it was negligence on the part of the company to so operate said car without such suitable fender or appliance; and if they further find that if said car had at said time been provided with such suitable fender or appliance, the deceased notwithstanding his negligence, if any, in getting upon said track, would not have been killed, then the defendant is liable to the plaintiff for the damage occasioned by his death and it is the duty of the jury to find a verdict in favor of the plaintiff."

The foregoing instruction is in conflict with the cases hereinbefore cited, and is also in direct conflict with the case of *Waterman* v. *Visalia Electric R. R. Co.*, 23 Cal. App. 350, 357 [137 Pac. 1096, 1099], where it is said: "They would then apply said instruction to that contingency and necessarily reach the conclusion that though the child's mother was guilty of negligence that contributed directly to the injury, yet, since defendant, if it had furnished suitable brakes, might have avoided the accident, plaintiff was entitled to recover. This would be, of course, to set at naught and completely nullify the doctrine of contributory negligence. It would be in effect that the prior negligence of defendant, if contributing to the accident, would render defendant liable notwithstanding the succeeding negligence of plaintiff which contributed directly and proximately to the injury. In other words, contributory negligence would be entirely eliminated from the case."

There is no theory of the instant case under which the above-quoted instruction would have been proper. Appellant suggests that it was given under the doctrine of "last

clear chance,'' but, as pointed out by appellant and admitted by respondent, that doctrine has no application here because, as clearly stated in the case of *Waterman* v. *Visalia E. R. R. Co.*, 23 Cal. App. 356 [137 Pac. 1096], that doctrine could only apply where the defendant or its servant was actually aware of the danger of the injured person in time to have avoided the accident, and, as demonstrated by the evidence in the present case, deceased was not in a position of danger until he stepped upon the track, which was just an instant before he was struck, and the defendant was afforded no opportunity by the exercise of the greatest possible diligence to avoid the accident. This instruction was, therefore, erroneous and greatly prejudicial to defendant.

The judgment is reversed.

Nourse, J., and Sturtevant, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 4, 1922.

All the Justices concurred.

Waste, J., was absent and Richards, J., *pro tem.,* was acting.