[L. A. No. 3805.. Department One.—March 31, 1917.]

## ADA COOPER LANGFORD et al., Respondents, v. SAN DIEGO ELECTRIC RAILWAY COMPANY (a Corporation), Appellant.

NEGLIGENCE — COLLISION BETWEEN AUTOMOBILE AND STREET-CAR — RESPONSIBILITY FOR ACCIDENT — INSTRUCTIONS — RELATIVE RIGHTS AND OBLIGATIONS OF PARTIES.—In an action to recover damages for injuries received by a wife in a collision between an automobile in which she and her husband were riding and a street-car belonging to an electric railway company, where on the whole record there is room for serious doubt whether responsibility for the accident in reality rested upon the husband, or upon the defendant, any substantial error in the instructions defining the relative rights and obligations of the driver of the automobile and the person in charge of the street-car, must be regarded as prejudicial.

ID.—COMPETENCY OF MOTORMAN—EXERCISE OF DUE CARE—ERRONEOUS INSTRUCTIONS.—An instruction that it was the duty of the company to employ competent and careful persons and of the motorman to exercise proper care to avoid accidents, and that the company would be liable for any injuries proximately caused by its failure in such respects; and the refusal to instruct that the plaintiffs did not complain that the motorman was incompetent, and that the only question for the jury to consider with reference to him was his due care, are prejudicially erroneous, since the question of the competency of the motorman or his reputation for care were not proper subjects of inquiry in such an action.

ID.—STREET RAILROADS—DUTIES OF OPERATORS.—An instruction that it is the duty of street-car operators to have their power under control, and so use the control as to avoid injury whenever possible, is objectionable in the use of the words, "whenever possible," as it is their duty to exercise ordinary care.

ID.—DRIVING ON STREET-CAR TRACK.—An automobile or other vehicle driver has the right to drive on a street-car track, where the other part of the street is impassable.

ID.—MUNICIPAL ORDINANCE—STREET TRAVELING.—A municipal ordinance requiring every driver of a vehicle to travel on the right side of the street as near the right-hand curb as possible, does not prohibit the use of the left-hand side of the street under all circumstances.

ID.—"LAST CLEAR CHANCE" DOCTRINE—PLEADING.—In an action for injuries, the plaintiff may rely upon the "last clear chance" doctrine, without expressly alleging the doctrine in his complaint, where he has alleged that the injury was caused by the defendant's want of reasonable care, and the allegation is denied.

ID.—EASY STOPPAGE OF STREET-CARS—ERRONEOUS INSTRUCTION.—An instruction that street-cars with proper appliances are easily stopped is misleading, in the use of the words "easily stopped," and objectionable as involving a charge on a matter of fact.

APPEAL from a judgment of the Superior Court of San Diego County, and from an order denying a new trial. W. A. Sloane, Judge.

The facts are stated in the opinion of the court.

Read G. Dillworth, and E. Swift Torrance, for Appellant.

Adam Thompson, for Respondents.

SLOSS, J.—The plaintiffs are husband and wife. They brought this action to recover damages for injuries received by the wife in a collision between an automobile in which the plaintiffs were riding and a street-car belonging to the defendant company. There was a trial by jury, resulting in a verdict and judgment for five thousand dollars in favor of the plaintiffs. The defendant appeals from the judgment, and from an order denying its motion for a new trial.

The points raised by the appellant turn principally upon the court's instructions to the jury. To understand these questions, their discussion should be preceded by a brief statement of the facts.

The defendant operates a double track line of electric street railway on Washington Street and other streets in the city of San Diego. Washington Street runs east and west. Among the streets intersecting it are Falcon, Goldfinch and Hawk Streets. Falcon Street is the most easterly of these, the next street to the west being Goldfinch Street, and Hawk Street the one next beyond. The accident resulting in Mrs. Langford's injury occurred on the evening of March 13, 1913, at the intersection of Washington and Goldfinch Streets. The pavement of Washington Street was being repaired, and the only part of the street that was passable was that occupied by the tracks of the Railway Company, including a space of two feet in width on either side, beyond the outer rails. The automobile was driven by Norton Langford, the husband. He was coming easterly on Washington Street. As Langford crossed Hawk Street, an east-bound car of the

defendant was running on the southerly track, a short distance ahead of him. He followed on the southerly track, until the car came to a stop at or near the intersection of Goldfinch Street. There is a sharp conflict over what took place then. Langford's testimony was, in effect, that the street-car stopped some distance west of Goldfinch Street to take on passengers; that in order to avoid the delays which would be imposed upon him by the frequent stops of the street-car, if he remained behind it, he turned out to the left or north track, with the intention of passing around the eastbound car, and getting in front of it. The street-car started again as he got abreast of it, and as Langford drew up, the motorman increased the speed of the street-car. About this time Langford saw a west-bound car ahead of him on the northerly track, at a distance of one or two blocks. Concluding that he would not be able to get ahead of the eastbound car, and cross to the southerly track in front of it before the approaching west-bound car would be upon him, Langford stopped his automobile with the intention of falling in to the right behind the east-bound car. This brought his automobile to a standstill upon the north track, about the middle of the intersection of Goldfinch and Washington Streets. Before he was able to get his machine out of that position, the west-bound street-car ran into him.

The complaint charged that the collision was caused by the careless, negligent, and unskillful running of the car by the defendant's servants. The answer denied negligence, and alleged that the collision was caused by the negligence of Langford in turning on to the northerly track at a time when the west-bound car was so close that a collision was inevitable. The evidence offered by the defendant tended to support these claims. There was ample and substantial testimony from which the jury might well have concluded that the west-bound car was very near the intersection of Goldfinch Street when Langford drove his automobile on to the northerly track, and that the motorman driving said car was not, and could not have been, aware of Langford's presence on the north track in time to enable him to stop the street-car. The appellant does not claim, and we do not suggest, that the evidence was not sufficient to support the verdict of the jury. Upon the whole record, however, there is room for serious doubt whether responsibility for the accident in reality rested upon

Langford or upon the defendant. Under these circumstances any substantial error, if such there was, in the instructions defining the relative rights and obligations of the driver of the automobile and the person in charge of the street-car, must be regarded as prejudicial.

Among other instructions, the court gave the following: "You are further instructed that it is and was the duty of the defendant corporation to employ competent and careful persons to manage its street-cars, and that it was and is the duty of the motorman in charge of the street-cars of the defendant to exercise proper care, and keep a proper lookout, in order to avoid, if possible, all accidents and injury, and the defendant would be liable for any injury proximately caused by its failure in these respects." The court refused to comply with the defendant's request to instruct the jury: "Plaintiffs do not here complain that the motorman on defendant's west-bound street-car was incompetent or inexperienced, and the only question for you to consider with reference to him is whether on the occasion of the accident he acted with the care and prudence which a reasonably prudent man under the circumstances would have exercised." The appellant assigns as error the giving of the one and the refusal to give the other instruction. These assignments are well taken. The question of the competency or incompetency of the motorman was not an issue, nor could it have been made an issue, in the case. The great weight of authority supports the rule that in actions of this kind the competency of the person claimed to have acted negligently, or his reputation for care, is not a subject of inquiry. The decisions in this state are definitely in accord with this view. In *Cunningham* v. *Los Angeles Ry. Co.*, 115 Cal. 561, 564, [47 Pac. 452], the court said, in dealing with this question: "Defendant was responsible to plaintiff for a want of ordinary care only, and whether it was in the exercise of such care was to be determined from a consideration of what actually occurred at the time of the alleged negligent act, regardless of any fact affecting the general character of the servant for skill or proficiency in the discharge of his duty. The question was, Did the servant exercise ordinary care to avoid the injury? If he did, the plaintiff could not recover, no matter how wanting the servant may have been in general competency; while if he did not exercise such care, plaintiff was entitled

to recover, even if the servant possessed the utmost degree of efficiency and skill in the performance of his duty. The sole question, therefore, was, What was the conduct of the servant at the time? and this was to be unembarrassed by any consideration of his general qualifications." In the earlier case of *Towle* v. *Pacific Improvement Co.*, 98 Cal. 342, [33 Pac. 207], the court had declared the same rule, although it was there applied to a somewhat different state of facts. Quoting from 2 Thompson on Negligence, page 804, the court said, in the Towle case, that "the principle is that the question whether a person was at a given time in the exercise of due care is to be resolved upon evidence of what took place at the time, and not upon evidence of the general character he may sustain." (See, also, *Spear* v. *United Railroads*, 16 Cal. App. 637, [117 Pac. 956] ; *Carr* v. *Stern*, 17 Cal. App. 397, [120 Pac. 35] ; *Minot* v. *Snavely*, 172 Fed. 212, [19 Ann. Cas. 996, 97 C. C. A. 30].) Under instruction 13, the jury was authorized to hold the defendant liable because it had employed an incompetent motorman, even though the evidence of the facts surrounding the accident may not have been sufficient, in and of itself, to show that the motorman had failed to exercise due care. The vice of the instruction is not remedied by the concluding words that "defendant would be liable for any injury proximately caused by its failure in these respects." The argument is that the mere employment of an incompetent motorman could not proximately cause the injury, if the motorman was not negligent on the particular occasion. But the answer to this suggestion is that the natural effect of testimony of incompetency is to lead the jury to infer that the person whose conduct is in question failed to act properly at the time and in the very matter under investigation. (Wigmore on Evidence, sec. 65.) The error is emphasized by the court's refusal to give the instruction requested by the appellant. The requested charge was designed to limit the jury, on the question of the defendant's negligence, to an examination of the conduct of the motorman at the very time in controversy. As we have seen, the defendant was entitled to have the inquiry so limited.

If there had been no evidence bearing upon the question of the motorman's competency, these errors might, perhaps, be regarded as of little moment. But the bill of exceptions

contains an explicit statement that the motorman, when testifying as a witness, was dull, slow, and hesitating; that he showed a lack of knowledge of the appliances used on the car; and that "the jury might readily have drawn the conclusion from his manner of testifying, and his appearance on the witness-stand, that he was incompetent to serve as a motorman at the time of the collision." As we have already said, the evidence left the true cause of the accident in great doubt. We cannot say that, if this instruction had not been given, the jury ought, nevertheless, to have found in favor of the plaintiffs. We cannot even, after a careful review of the evidence, say that the jury, under proper instructions, would probably have reached a conclusion in favor of the plaintiffs. Under these circumstances, we would not be justified, even under the liberal provisions of section 4½ of article VI of the constitution, in disregarding the error, and denying a new trial.

As a guide to the further proceedings which must be had, we may refer briefly to some criticisms directed by the appellant against the remaining instructions of the court. We are not, in this, to be understood to hold that the objections which we find to be good would alone justify a reversal. Instruction 14 states that it is the duty of drivers of street-cars to have their power under control, and so use the control "as to avoid injury whenever possible." The words "whenever possible," put too stringent an obligation upon the operator of the car. His duty is to exercise ordinary care, and the court so instructed the jury, in other parts of its charge. It would be well, upon another trial, to obviate possible confusion by modifying instruction 14.

We think there was no substantial error in instructions 12, 15 and 17, regarding the right of the driver of the automobile to drive upon the part of the street occupied by the street-car track. It is true, generally, and more especially where, as here, the portion of the street beyond the tracks is not passable, that the driver of any vehicle has the right (always subject to the duty to exercise due care), to drive on the part of the street occupied by the street-car rails. The appellant's complaint seems to be based on the proposition that it was negligent for the plaintiff to drive on to the left-hand track. But this subject was covered by other instructions, and was not involved in the instructions now under consideration.

A point is made of an ordinance of the city of San Diego, providing that every person driving a vehicle on any street shall "on all occasions when it is practicable so do to, travel on the right side of such street, and as near the right-hand curb thereof as possible." The ordinance was not intended to prohibit the use of the left-hand side of the street under all circumstances. The only part of the street that was passable was that occupied by the tracks. There was no way for the plaintiffs to pass the east-bound car except by going to the left of it. In a certain sense it was "practicable" for them to remain behind that car, stopping whenever it stopped, and being delayed by it as long as it remained upon the portion of Washington Street that was undergoing repairs. But we do not think that the ordinance should be given so strict an interpretation. Whether it was reasonable, under the circumstances, to hold the driver of an automobile to this inconvenient mode of travel, was, we think, a question for the jury. They may well have concluded that it was not "practicable" for Langford to keep on the right of the road where, by so doing, he would be unduly blocked in his progress.

Complaint is made of the action of the court in instructing the jury upon the "last clear chance" doctrine. It is exceedingly doubtful whether there was any evidence to which these instructions were applicable. We do not, however, express any definite view on this point, as the evidence may be different upon another trial. We do not agree with the appellant's contention that facts showing the applicability of the "last clear chance" rule must be alleged in the complaint. The appellant relies upon *Esrey* v. *Southern Pacific Co.*, 88 Cal. 399, 406, [26 Pac. 211]. The decision did not turn upon the question of pleading, and what is said in the opinion on this point is little more than a passing intimation. On the second appeal in the same case (*Esrey* v. *Southern Pacific Co.*, 103 Cal. 541, 546, [37 Pac. 500]), the court seemed to view with doubt the suggestion, made on the first appeal, that the complaint should have charged that the defendant acted willfully and wantonly, but was compelled to accept it as binding under the "law of the case" rule. Well-considered cases in other jurisdictions hold that the plaintiff may rely upon the "last clear chance" doctrine where he has made proper allegation that his injury was caused by the defendant's want of reasonable care, and the defendant has denied this allega-

tion. (*Nathan* v. *Charlotte etc. Ry. Co.*, 118 N. C. 1066, [24 S. E. 511] ; *Crowley* v. *Burlington etc. Ry. Co.*, 65 Iowa, 658, [20 N. W. 467, 22 N. W. 918].) As was said in the North Carolina case, "In contemplation of law, the injury is not attributed to the wrongful act unless it is shown to be the immediate and proximate cause. So that the allegation by the plaintiff that the injury was due to the defendant's carelessness, and the denial of that, coupled with the averment by defendant that the contributory negligence of the plaintiff was the cause, necessarily involves the question whether the defendant negligently omitted to avail itself of the last clear chance to avoid the accident by the performance of a legal duty."

Instruction No. 19, given at the request of the plaintiffs, contained the statement that "street-cars with proper appliances are easily stopped." This declaration should have been omitted. In the first place, it involves a charge upon a matter of fact. Next, it was misleading, in that it suggested to the jury that the sufficiency of the appliances on defendant's cars was involved, whereas no such question was presented by the pleadings or the evidence. Still further, the words "easily stopped" are too uncertain to furnish a standard of any value. One person might think that a car was "easily stopped" if it could be stopped within forty feet, while another might think it could not be easily stopped unless brought to a standstill after running ten or fifteen feet.

Some other instructions are criticised, but we think that on a reading of the charge as a whole, the objectionable matter pointed out by the appellant is not such as to have caused any material misunderstanding on the part of the jury.

The judgment and the order denying a new trial are reversed.

Shaw, J., and Lawlor, J., concurred.

Hearing in Bank denied.