[Civ. No. 2633.  First Appellate District, Division One.—June 27,
1919.]

E. L. ROOS, Respondent, v. ROBERT M. LOESER,
Appellant.

[1] ANIMALS—DOGS—VALUE—QUESTION FOR JURY.—Dogs constitute
property of their owners and have pecuniary value. It may be
the market value, or some special or peculiar value to its owner
to be ascertained by reference to its usefulness or other qualities.
Its amount is a question for the jury, after hearing evidence
directed to those points.

[2] ID.—INJURIES BY DOGS—LIABILITY OF OWNER.—The owner of a
dog is not liable for the injuries caused by it unless it is vicious
and the owner has notice of that fact.

[3] ID.—NOTICE OF VICIOUS PROPENSITY—KNOWLEDGE OF SERVANT.—
The knowledge of a servant or agent of an animal's vicious pro-
pensity will be imputed to the master when such agent or servant
has charge of or control over the animal.

[4] ID.—NONCOMPLIANCE WITH ORDINANCE — DEATH OF DOG — CON-
TRIBUTORY NEGLIGENCE OF OWNER.—In an action for damages
alleged to have been sustained by plaintiff by reason of the kill-
ing of her dog, the plaintiff may not be charged with contrib-

utory negligence because of the fact that her dog was upon the
public streets without being licensed, where her omission to com-
ply with the ordinance requiring dogs to be licensed did not con-
tribute to the incident which caused the death of the dog.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco. Daniel C. Deasy,
Judge. Affirmed.

The facts are stated in the opinion of the court.

Andrew Thorne for Appellant.

Wise & O'Connor and Goldman & Altman for Respondent.

KERRIGAN, J.—This is an action for damages alleged
to have been sustained by plaintiff by reason of the killing
of her dog, of the variety known as Pomeranian, by an Aire-
dale belonging to the defendant.  A jury trial was had, and
judgment went for the plaintiff in the sum of five hundred
dollars.  Defendant made a motion for a new trial, which
was denied, and he now appeals from the judgment.

The complaint alleges that on the sixteenth day of May,
1917, the plaintiff was the owner of a Pomeranian dog of
the value of one thousand dollars; that the defendant was
the owner of an Airedale, of vicious disposition and danger-
ous character, which on said date and for a long time prior
thereto was evilly disposed toward other dogs and was ac-
customed to attack them without provocation, all of which
matters were well known to the defendant; that neverthe-
less, the defendant carelessly and negligently permitted said
Airedale to go upon the public streets of San Francisco un-
leashed and free from restraint, and that on the day men-
tioned, without provocation and while the plaintiff's dog
was proceeding peaceably along the public street, said Aire-
dale attacked it from behind, the attack resulting in break-
ing the neck of the Pomeranian, from which its death imme-
diately ensued.

From the evidence it appears that on said day the Pome-
ranian, attended by two maids, was pursuing the even tenor
of its way upon the street, "tarrying" now and then and
occupied with matters entirely his own, when the Airedale,
an arrogant bully, domineering and dogmatic, being beyond

the reach of the sound of his master's voice and having evaded the vigilance of his keeper (for the maids and the man were vigilant), dashed upon the scene, and with destruction in his heart and mayhem in his teeth pounced upon the Pomeranian with the result already regretfully recorded; the plaintiff's dog had had its day. It crossed to that shore from which none, not even a good dog, ever returns.

Leaving this painful subject and turning to the considerations elaborately discussed in the briefs of able counsel, we remark that there was a time in the history of the law when, as is said in one of the early cases, "dog law" was as hard to define as "dog Latin." As Blackstone puts it, dogs were the subject of property to a very limited and qualified degree; they had no intrinsic value, and were regarded as being kept only through the whim or caprice of their owner. They were not the subject of larceny. (2 Blackstone's Commentaries, 393.) But that day has passed, and dogs now have a well-established status before the law. Considerable sums of money are invested in dogs, and they are the subject of extensive trade. Aside from their pecuniary value their worth is recognized by writers and jurists. Cuvier has asserted that the dog was perhaps necessary for the establishment of civil society, and that a little reflection will convince one that barbarous nations owe much of their subsequently acquired civilization to the dog. From the building of the pyramids to the present day, from the frozen poles to the torrid zone, wherever man has wandered there has been his dog. In the case of *State* v. *Harriman*, 75 Me. 562, [46 Am. Rep. 423], he is eulogized in the following language: "He is the friend and companion of his master, accompanying him on his walks; his servant aiding him in his hunting; the playmate of his children, an inmate of his home, protecting it against all assailants." In his well-known tribute to the dog, United States Senator Vest characterizes him as "the one absolutely unselfish friend a man may have in this selfish world, the one that never deserts him, never fails him, the one that never proves ungrateful or treacherous." (See, also, *Sabin* v. *Smith*, 26 Cal. App. 676, 679, [147 Pac. 1180].)

The Pomeranian was small, weighing about four and a half pounds, but history discloses that the small dog, per-

haps oftener than his bigger brother, has rendered modest but heroic service and by his fidelity has influenced the course of history.

[1] As already indicated, the law now recognizes that dogs have pecuniary value, and constitute property of their owners, as much so as horses and cattle or other domestic animals. (*Ten Hopen* v. *Walker,* 96 Mich. 236, [35 Am. St. Rep. 598, 55 N. W. 657].) It may be the market value, or some special or peculiar value to its owner to be ascertained by reference to its usefulness or other qualities. (*Heiligmann* v. *Rose,* 81 Tex. 222, [26 Am. St. Rep. 804, 13 L. R. A. 272, 16 S. W. 931].) Its amount is a question for the jury, after hearing evidence directed to those points. (*Parker* v. *Mise,* 27 Ala. 480, [62 Am. Dec. 776].) The plaintiff's dog was the proud possessor of the kennel name Encliffe-Masterpiece; his pedigree and reputation entitled him to be regarded in dog circles as possessing the bluest of blood; in short, in canine society he belonged to the inner circle of the four hundred. In west and east he had won the first prize in every bench show at which he had been exhibited. He was middle-aged and in good health. Experts testifying placed his monetary value at one thousand dollars.

[2] The owner of a dog is not liable for the injuries caused by it unless it is vicious and the owner has notice of that fact. (3 Corpus Juris, p. 89, sec. 330.) But we think the evidence in this case shows, by inference at least, that while the defendant's dog was an estimable animal in many respects, he was, nevertheless, prone to attack without provocation other dogs irrespective of size, and that such an assault upon a dog of the weight and physical characteristics of that owned by the plaintiff was likely to prove harmful, if not fatal, to the object of the attack. [3] As to the defendant's prior knowledge of the vicious propensities of his Airedale, while the evidence may not clearly show that he was personally aware of them, it sufficiently demonstrates that his employee, in charge of him at the time of the attack, and whose custom it was to exercise it on the public streets, knew of its dangerous character, which knowledge the law charges to the employer. The knowledge of a servant or agent of an animal's vicious propensity will be imputed to the master when such agent or

41 Cal. App.—50

servant has charge of or control over the animal.   (3 Corpus Juris, p. 96, sec. 328.)

[4]  It is urged by the appellant that the court erred in refusing to instruct the jury, as requested, that the plaintiff was guilty of contributory negligence arising from the fact that her dog was upon the public streets without being licensed—unlike the defendant's Airedale, whose master had ornamented his favorite with a tag entitling him to roam the city's streets secure from interference by the poundkeeper or his myrmidons.   The appellant's contention in this respect would be well grounded if the plaintiff's omission to comply with the ordinance requiring dogs to be licensed had contributed to the incident resulting in the Pomeranian's untimely end.   But for aught that appears the absence of a tag from the collar of plaintiff's dog was unnoticed by the Airedale, and was not the matter that aroused his ire or induced him to make the attack.   His was the canine point of view and not that of the license collector.   When the violation of an ordinance has no causal connection with the injury, as contributing thereto, the rule contended for by appellant has no application.   This was held in the case of *Shimoda* v. *Bundy*, 24 Cal. App. 675, [142 Pac. 109], where, in its discussion of the subject, the court says: "One who violates an ordinance wherein a penalty is fixed for noncompliance with its provisions may be subjected to the penalties therein prescribed, but he cannot in addition thereto be deprived of his civil rights to recover damages, perhaps in many thousands of dollars, sustained by reason of the negligence or wrong of another, when such violation bore no relation to the injury and did not contribute in the remotest degree thereto."

Judgment affirmed.

Waste, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 25, 1919.

All the Justices concurred.