DANIEL ROSS, ADMINISTRATOR AD PROSEQUENDUM OF CHRISTINA ROSS, DECEASED, RESPONDENT, v. THE PENNSYLVANIA RAILROAD COMPANY AND CALVIN W. STEELMAN, APPELLANTS.

Argued October 17, 1929—Decided February 3, 1930.

For the appellants, *Wall, Haight, Carey & Hartpence.*

For the respondent, *Richard J. Mackey.*

The opinion of the court was delivered by

HETFIELD, J.   This action was instituted by the plaintiff, as administrator *ad prosequendum* of Christina Ross, deceased, to recover the pecuniary loss sustained by Thomas Ross, her son and sole next-of-kin.   The plaintiff's intestate, on November 8th, 1923, was riding in an automobile, with her two children, Thomas, three years of age, and Robert, eighteen months old and her husband, Thomas Ross, Sr., who was operating the car.   Mr. and Mrs. Ross were on the front seat, she holding the youngest child, while Thomas sat on the rear seat.   The automobile was struck by a railroad train at a grade crossing in Millmay, Atlantic county, New Jersey.   All of the occupants of the car were killed, with the exception of the child, Thomas, who survived.   The case was tried at the Hudson Circuit, and resulted in a verdict in favor of the plaintiff, for $25,000, which was afterward reduced by the Supreme Court, on a rule to show cause, to $15,000, which the plaintiff consented to accept.   Judgment was entered accordingly, from which this appeal is taken.

The plaintiff alleges that the defendant railroad company controlled and operated the train in question, and that the accident was due to the negligence of the said railroad company, and the defendant, Calvin W. Steelman, who was the engineer operating the train.

There are forty grounds of appeal, many of which have been consolidated in the argument presented. The contention is made that the trial court should have directed a verdict in favor of the defendant railroad company, for the reason that the West Jersey and Seashore Railroad Company controlled and operated the train which collided with the automobile in which the plaintiff's intestate was riding, and that the wages of the defendant Steelman, the engineer, and other members of the train crew, were paid by the West Jersey and Seashore Railroad Company, and while admitting the defendant railroad company owned a majority of the capital stock of the West Jersey and Seashore Railroad Company, argues that this fact alone does not render the defendant railroad company liable for the other's negligence, and alleges that the true relation between the two railroad companies was one of close co-operation in public service as well as in private economic business administration, and that both railroads were part of a system having the common name "Pennsylvania," which is not a corporation.

We agree that ownership alone of capital stock in one corporation by another, does not create any relationship that by reason of which the stockholding company would be liable for torts of the other, but there was evidence submitted, some of which was allowed over the objections of the defendants, and we think properly so, that the tender of the locomotive in question had formerly painted on its side "West Jersey and Seashore Railroad Company," for which there had been substituted the word "Pennsylvania," that the word "Pennsylvania" appeared on the coaches of the train and that the letters "P. R. R.," appeared on the uniforms of some of the train crew. The time table published by the "Pennsylvania Railroad System," which was in effect at the time of the accident, was admitted in evidence for the purpose of showing operation and control of the train in question, and the schedule contained therein indicated that the train was running on said schedule and was designated as train No. 2412. There was also admitted in evidence, over the defendant's objections, two letters written by the plaintiff, the first one being

directed to the defendant railroad company inquiring as to the intention of the company in making some provision for the child who survived. The letter was answered by one A. P. Turnbull, district claim agent, as was the second letter sent by the plaintiff to said agent. This correspondence was admitted to support the plaintiff's contention that the defendant railroad company operated and controlled the train, and would seem to justify the inference that the claim agent assumed that any claim, which the plaintiff might have, was properly made against the Pennsylvania Railroad Company. In view of this evidence, the question of whether the defendant railroad company operated and controlled the train was a matter of fact, and was properly left for the determination of the jury. Where a corporation holds stock of another, not for the purpose of participating in the affairs of the other corporation, in the normal and usual manner, but for the purpose of control, so that the subsidiary company may be used as a mere agency or instrumentality for the stockholding company, such company will be liable for injuries due to the negligence of the subsidiary, and the mere fact that an accident is caused by the negligence of persons in the employ of the subsidiary will not relieve the dominant company of responsibility.

The defendants further contend, that the trial court erred in submitting to the jury the question of negligence on the part of the defendant Steelman, for the reason that the accident was caused solely by the negligence of the operator of the automobile, and the plaintiff's intestate. We think that the proof was sufficient to support a verdict. The jury could have inferred, from the evidence, that the driver of the automobile, before attempting to cross the tracks, stopped the car to look for any approaching trains, then proceeded, and when the automobile arrived on the tracks, it stalled, and remained on the tracks for about two minutes before it was struck by the train; that the train approached the crossing at the rate of between sixty and sixty-five miles an hour, and the defendant engineer saw the auto heading toward the crossing when the train was some thirteen hundred to fifteen hundred yards

away; that the train could have stopped within seven hundred feet; that no signals of any kind were given by the engineer, that the engineer did not notice the automobile, after first seeing it, until he was within one hundred and thirty feet of the place of the accident, although he had a straight of way view for at least a mile; that the plaintiff's intestate endeavored to get out of the car, but failed. This proof justified a finding that the negligence of the engineer was the proximate cause of the accident, and that the plaintiff's intestate and her husband, were free from contributory negligence. Therefore, the case was properly transferred to the jury for its consideration.

The defendants have also argued the question of the refusal of the trial court to admit in evidence two certificates of the commissioner of motor vehicles of this state, offered for the purpose of showing the date of registration of the automobile, and that no driver's license had been issued to Mr. Ross, and contend that the absence of a driver's license was evidential of the operator's unfitness to drive a car. We think such evidence was irrelevant, and that the rejection was proper. Non-observance of the statute, by Ross, is not evidence of his inability to drive a car. He may have possessed more skill than many persons who hold a license; and the date of the registration of the car was immaterial, as it is possible that he owned several cars before the one in question. A collateral unlawful act not contributory to the injury will not bar recovery, nor will the fact that the operator of an automobile had no license, as required by statute, bar a recovery for an injury, where such failure had no causal connection with the injury. This court, in the case of *Muller* v. *West Jersey and Seashore Railroad Co.*, 99 *N. J. L.* 186, stated: "The rule established in this state is that where one unlawfully traveling on a highway is injured by the negligence of another, he may recover for his injuries unless his violation of the law contributes to the accident, or is its proximate cause. In the instant case, the non-registry of an auto and the absence of a driver's license did not contribute to, nor was it the proximate cause of the accident, as might

be the case if the auto was not equipped with brakes, as re-quired, so as to enable the driver to, if he should do so, after due notice of the approaching train, stop his auto before attempting to cross in front of it." In the case of *Polmatier* v. *Newbury*, 231 *Mass.* 307, it was held, in a case where it was sought to show that the plaintiff, operator of a motor-cycle, had never been licensed to operate the same, that such testimony was irrelevant; that if the operator's conduct at the time of the accident did not contribute to the injuries of which he complained, his previous inexperience was immaterial.

It is further contended that the court erred in refusing to charge certain requests. The record shows that all proper requests were charged in substance, and that there was no error in the charge itself.

The judgment will be affirmed.

*For affirmance*—The Chancellor, Chief Justice, Par-ker, Black, Campbell, Lloyd, Case, Bodine, Van Bus-kirk, McGlennon, Kays, Hetfield, Dear, JJ. 13.

*For reversal*—None.