BERNICE CARD *vs.* HARRY BISSING ET AL.
GORDON H. CARD *vs.* HARRY BISSING ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 8th—decided December 15th, 1931.

*Samuel A. Herman* and *J. Clinton Roraback,* with whom was *Lester W. Schaefer,* for the appellants (defendants).

*Thomas J. Wall* and *Thomas F. Wall,* for the appellee (plaintiff).

HAINES, J. These are companion cases, growing out of the same automobile collision, each brought against the named defendant and Elsie A. Bissing, and were

tried together.  In the request for a finding there are a number of questions discussed which are not included in the statement of the questions of law sought to be reviewed.  This statement, which is required by Practice Book, p. 311, § 18, is for the guidance of the court in making up its finding of facts and indicates to opposing counsel the questions they must be prepared to meet.  We consider those assignments only which relate to the questions listed in the request for a finding, and one of these, which is common to both cases, is whether Harry Bissing was the agent of Elsie A. Bissing.  Corrections are sought in the finding bearing on this subject.  The record discloses not that we have here a conflict of evidence, but that the witnesses do not disagree in any essential particular as to the circumstances.  It appears that the car which the defendant Harry Bissing was driving was owned by him and had been bought for the express purpose of his use in the performance of a contract he had as engineer and builder, in the construction of a house and the development of an estate for a customer at Cornwall Bridge.  He drove the car back and forth from his home to his work and to transfer material, tile, bricks and whatever was necessary for the work in hand; at the time of the collision he was thus transporting some material in furtherance of this work.  His wife, Elsie A. Bissing, owned and conducted a poultry and egg farm; he did not always take eggs which she sent to Torrington, but frequently did so Thursdays, at which time he also did marketing for her; at the time of the accident, which was on a Monday, he had in his car, beside his own building materials, some eggs in cases, which he was to deliver in Torrington for his wife; his family consisted only of his wife, and she never drove the car, nor did she in any way control it at the time of the collision.  The

finding as made should be amplified by such further subordinate facts as we have detailed. The trial court concluded that the transporting of his building materials by this defendant "was merely an incident of the trip." Upon the finding as we have amended it, it could not logically or reasonably be so held. The use of his own car for the very purpose for which he had purchased it was the main purpose of this trip, and the carrying of the eggs was an incidental feature of the situation. It was no more than an accommodation by him as the husband, since he was going to Torrington on his own business that day. It necessarily follows that Harry Bissing was not as matter of law the agent, servant or employee, of Elsie A. Bissing, and the judgment against the latter was erroneous and must be reversed in both cases. *Lassen* v. *Stamford Transit Co.*, 102 Conn. 76, 128 Atl. 117; *Hall* v. *Sera*, 112 Conn. 291, 152 Atl. 148, and cases cited. The next question, presented only by the appeal in the Gordon Card case, relates to the effect upon the plaintiff's right of recovery of the lack of his signature on his operator's license. The finding is to the effect that the plaintiff was a resident of North Adams, Massachusetts, and owned the car he was driving, it being duly registered under the laws of the State of Massachusetts; that he was duly licensed to operate his car but had not signed or indorsed his operator's license. An attack is made upon the conclusion of the trial court that the plaintiff was under these circumstances, a licensed driver and entitled to maintain this action in Connecticut.

We take judicial notice of the statutory provisions of other States. General Statutes, § 5599; *Tuttle* v. *Jockmus*, 106 Conn. 683, 138 Atl. 804. One of the provisions of the Massachusetts statute was: "Every person licensed to operate motor vehicles as aforesaid

shall endorse his usual signature on the margin of the license, in the space provided for the purpose, immediately upon the receipt of said license, and such license shall not be valid until so endorsed." Massachusetts Public Acts, 1921, Chap. 403, § 1; Id. 1923, Chap. 464, § 3; Id. 1925, Chap. 283. Under the General Statutes of Connecticut, Revision of 1918, § 1532 (b), it was provided that "every person licensed to operate motor vehicles shall indorse his signature on the back of his license, in a space provided for the purpose, and such license shall not be valid until so indorsed"; and in § 1565 it was further provided that no recovery shall be had in the courts of this State "if said motor vehicle be legally registered but was being operated by an unlicensed person in violation of any provision of section 1530, 1531 or 1532." These sections were a part of Chapter 77 of the Revision of 1918, which was repealed and for which a substitute law was enacted in Chapter 233, Public Acts of 1919; and that chapter was in turn repealed and a substitute law enacted by Chapter 400 of the Public Acts of 1921. The pertinent portion of § 20 of Chapter 400 reads: "Every person licensed to operate a motor vehicle shall, before operating any motor vehicle upon a public highway, indorse his signature on the back of his operator's license in a space provided for the purpose. . . . Any person who shall violate the provisions of this section shall be fined"; while § 61 provided that "no recovery shall be had in the courts of this State by the owner of a motor vehicle . . . if such motor vehicle be legally registered but was being operated by an unlicensed person in violation of any provision of section fifteen, twenty or twenty-one of this Act." Section 61 was amended by a provision regarding renting or leasing in Chapter 195, § 21, of the Public Acts of 1925, and was repealed by § 2 of Chapter 256 of the

Public Acts of 1929. The appellants now claim in this court that our legislative Acts in which these provisions were eliminated from our statute law, were unconstitutional and void under our decision in *State v. McCook,* 109 Conn. 621, 147 Atl. 146, leaving the statutes of 1918 in force in their original form. The record discloses that this claim of unconstitutionality was not presented to or passed upon by the trial court and the question is raised in this court for the first time. We, therefore, do not consider it upon this appeal. *Rindge* v. *Holbrook,* 111 Conn. 72, 75, 77, 149 Atl. 231, and cases referred to therein.

For the purposes of the present appeal, it is sufficient to note that the statute law of this State at the time of the collision in question, contained no provision that an unlicensed driver could not recover, as formerly contained in the General Statutes, Revision of 1918, § 1565, and Chapter 400 of the Public Acts of 1921. We have had occasion to consider the effect of failure to indorse an operator's license, and said: "An operator's license is purely a personal privilege granted by the State on account of fitness. *Shea* v. *Corbett,* 97 Conn. 141, 145, 115 Atl. 694. The indorsement of the license is, at most, a convenient aid, supplementing the personal statistics contained in the application and appearing on the license, in identifying the possessor as the person to whom it was issued, and the General Assembly may well have regarded the prescribed fine as a sufficient penalty for the failure to so indorse it, and the provision of the prior statute making indorsement an essential prerequisite to the validity of the license as too drastic a consequence of such failure. Whatever the incentive may have been, the provision was dropped from the statute and there can be no question that a person who has lawfully obtained an operator's license, whether or not he has

indorsed it, is a licensed operator. . . . Since . . . 1919 . . . the holder of a lawfully obtained operator's license, whether or not he has indorsed it, is not an 'unlicensed person' and so not within the purview of § 61." *Cusack* v. *Laube & Co., Inc.,* 104 Conn. 487, 490, 133 Atl. 584.

If we turn to the decisions in Massachusetts, it is made manifest that, notwithstanding the statutory provision in that State requiring indorsement as a prerequisite of validity, the holder is not necessarily denied recovery. "We think that the operation of a car without a license, while it is a punishable act, does not render the operator a trespasser on the highway, but that the illegal element in the act is only the failure to have a license while operating it, so that if the operation and movement contributed to the accident with which the want of a license had no connection, except as a mere condition, they would not preclude the operator as a plaintiff from recovery. If the illegal quality of the act had no tendency to cause the accident, the fact that the act is punishable because of the illegality, ought not to preclude one from recovery for harmful results to which, without negligence, the innocent features of the act alone contributed." *Bourne* v. *Whitman* (1911) 209 Mass. 155, 171, 95 N. E. 404. "The fact that the plaintiff was operating his machine over the highway and that he had no license under the statute then in force . . . was not necessarily fatal to his right to recover. It was merely evidence of his negligence in the management of his machine, to be considered by the jury in connection with the facts bearing upon that question." *Holland* v. *Boston* (1913) 213 Mass. 560, 561, 100 N. E. 1009. "Under our decisions the illegal conduct of the plaintiff in operating his machine without a license to do so was merely evidence of negligence on his part.

But on the whole evidence the jury have found, not only that he was in the exercise of due care, but also that his illegal conduct did not contribute to the injury sued for. Under our common law, therefore, it was not a bar to his recovery." *Holden* v. *McGilli-cuddy* (1913) 215 Mass. 563, 564, 102 N. E. 923. See also *McMahon* v. *Pearlman* (1922) 242 Mass. 367, 136 N. E. 154. Therefore, unless failure to indorse his license had causal connection with his injury, which of course is not the fact in this case, the plaintiff would have been entitled under the law of Massachusetts to recover. In our State, since the repeal of the statutory disqualification, he is also entitled to recover, and this assignment of error cannot be sustained.

The remaining question relates to the assessment of damages, as to which, the only claim pursued in the brief, is that there was error in arriving at the loss of the use of the automobile, in that the court did not take into consideration the services of the driver, citing as authority for this claim *Mastrianni* v. *Apothecaries Hall Co.*, 109 Conn. 376, 146 Atl. 189. As in that case, so in this, the finding does not state that the services of the driver were included in the allowance made for the use of the machine; nor is there anything in this finding which tends to indicate that that was so; indeed, in the present case there was no element of hired driver to be considered, since the owner drove the car himself.

There is error; the judgment against Elsie A. Bissing is reversed in each case, and the causes are remanded to the Superior Court with direction to enter judgment for Elsie A. Bissing in each case for her costs, otherwise to stand as rendered.

In this opinion the other judges concurred.