[Civ. No. 2159.   Fourth Appellate District.—November 30, 1938.]

GUENTHER W. STRANDT, a Minor, etc., Respondent, v. JOHN W. CANNON, Appellant.

510

C. F. Jorz for Appellant.

Charles D. Swanner for Respondent.

GRIFFIN, J.—This is an appeal by the defendant from an order granting a new trial in an action for damages for personal injury tried before a jury. The jury returned its verdict in favor of the defendant and appellant John W. Cannon. The ground upon which the trial court bases the order setting aside the verdict is the claimed error in submitting to the jury two instructions which were requested by appellant.

The action in the lower court arose out of an automobile collision which occurred about the hour of 4 o'clock on April 28, 1935, at the intersection of Valencia Avenue and Munger Road, in Orange County. The collision was between an automobile driven by Kenneth Layton and one driven by John W. Cannon. Guenther W. Strandt, a minor, was riding as

a guest in the Layton automobile and was injured. Suit was instituted on behalf of the minor by Rudolph Strandt as guardian *ad litem* against John W. Cannon. Layton was not made a party defendant.

The Layton car in which respondent was riding was proceeding southerly on Valencia Avenue across the intersection of Munger Road and Valencia Avenue. The Cannon car was traveling in an easterly direction on Munger Road across said intersection. Both streets were open public highways, 60 feet in width with a 16-foot pavement, intersecting each other at right angles about one-half mile west of the town of Irvine.

The evidence shows that three corners of said intersection were clear and unobstructed and were used for bean fields; that the northwesterly corner of said intersection was obstructed by trees. The paved portion of Valencia Avenue did not continue beyond the south edge of the pavement on Munger Road. From there Valencia Avenue narrowed into a dirt road. It was crossed by a culvert and continued on through some near-by ranch property.

The appellant testified he knew this was a blind intersection; that up until the time he approached the intersection he had been traveling about 35 miles per hour and that at the time of the impact he was going 20 or 25 miles per hour; that he did not see the car in which respondent was riding until just the instant before the accident.

Respondent testified that the Layton car slowed down to practically a stop at the intersection, shifted gears and then traveled into the intersection at a speed of 5 or 10 miles per hour.

Layton placed the speed at 15 miles per hour or under. After the cars collided in this intersection the Chrysler, driven and owned by appellant, was found in the ditch on the south side of Munger Road near the culvert, about 27 feet from the point of impact.

The Overland, driven by Layton, was found on Munger Road about 60 feet from the center of the intersection. It was the intention of Layton not to turn at Munger Road but to continue straight across on the dirt road described, where they were going to see a friend.

The entire cross-examination of Layton, the driver of the car in which respondent was riding, was upon Layton's failure

to have an operator's license. A portion of it was as follows: By Mr. Jorz: ''Q. Did you ever discuss with him (Strandt) the question of whether or not you had a license to drive an automobile? A. I don't recall it . . . Q. Well, you didn't have a license to drive an automobile when this accident happened, did you? A. No. Q. You had been driving a car without a license? A. Yes, on the ranch. Q. You had never been given any examination by the vehicle department showing that you were able to drive a car had you? A. No.''

By the answer filed in the pleadings appellant put in issue the following separate and affirmative defenses: (1) That any injury sustained by Strandt was caused solely and proximately by the negligence of Layton in operating his automobile at the time in a careless and negligent manner; (2) Contributory negligence of Strandt; (3) That Strandt and Layton were engaged in a joint undertaking and enterprise and that the negligence of Layton in the operation of his automobile was, by virtue of said joint undertaking and enterprise, imputed to Strandt.

After a verdict by the jury in favor of Cannon and the judgment accordingly entered, Strandt moved for a new trial on several stated grounds. Following the hearing on the motion the trial court filed its order granting a new trial in the following language: ''After reviewing the evidence . . . the court is of the opinion that there was no evidence of contributory negligence on the part of the plaintiff who occupied the status of a passenger in the car operated by Kenneth Layton. If that is true the court is of the opinion that error was committed in reading defendant's instruction No. 4 to the jury . . . I think that the giving of defendant's instruction No. 4, together with defendant's instruction No. 2 was misleading to the jury, and they might reasonably infer from those instructions that there was evidence of contributory negligence on the part of the plaintiff.''

These instructions given by the court at the request of appellant are:

No. 2. ''You are instructed that the Vehicle Code of this State in effect at the time of this accident required the examination of all persons first applying for licenses to drive a motor vehicle, and an operator's license is in effect a certificate evidencing the fact that the holder of such license has demonstrated his competency to drive a motor vehicle,

and if the driver of a vehicle is unlicensed, that fact, if it is a fact, is *prima facie* evidence in the eyes of the law, that such driver is incompetent."

No. 4. "I instruct you, Ladies and Gentlemen of the Jury, that in this state you are not entitled to compare the negligence, if any, of the parties to this action. If you find that both parties to this action were negligent, then I instruct you that it makes no difference if the negligence of the defendant was in your opinion greater or less than the negligence of the plaintiff, and if you find from the evidence that the plaintiff was guilty of negligence in any degree, no matter how slight, and that his negligence contributed directly or proximately to the accident, your verdict shall be against the plaintiff and in favor of the defendant, Cannon."

These were but two of the many instructions offered and given for both appellant and respondent, to which objections were made. Respondent in his brief admits that defendant's instruction No. 4 is correct as an abstract proposition of law and states the doctrine of comparative negligence, but alleges that there was no evidence of contributory negligence on the part of respondent guest. Such being the case, and the trial court having so decided, it was error to give this instruction, if by so doing, the jury was misled. (*Murphy* v. *National Ice Cream Co.*, 114 Cal. App. 482 [300 Pac. 91]; *Wessling* v. *Southern Pac. Co.*, 116 Cal. App. 455 [3 Pac. (2d) 25]; *Briggs* v. *Hall*, 20 Cal. App. 372 [129 Pac. 288].)

In *Stoneburner* v. *Richfield Oil Co.*, 118 Cal. App. 449 [5 Pac. (2d) 436], it was held by this court that the trial court committed an error of law in giving an instruction requested by defendants dealing with the question of contributory negligence on the part of the plaintiff who was merely a guest in the automobile in which she was riding, where the question of plaintiff's contributory negligence was neither raised by the pleadings nor presented by the evidence.

The test of error in giving a correct instruction of law is whether it is misleading. If instructions, correct as abstract propositions, may have misled the jury, a new trial may be granted on that ground. (*Hirshberg* v. *Strauss*, 64 Cal. 272 [28 Pac. 235]; *In re Calkins*, 112 Cal. 296 [44 Pac. 577].)

There is no sufficient evidence in the record to establish appellant's defense of imputed negligence through

joint enterprise or otherwise. The negligence of the driver of the automobile cannot be imputed to the guest herein in the absence of any evidence showing that the latter exercised some control over the driver or that he possessed the power to supervise or direct the manner in which the automobile should be operated. (*Marchetti* v. *Southern Pac. Co.*, 204 Cal. 679 [269 Pac. 529].) ■ We find nothing in the evidence, either that admitted on behalf of the respondent or that introduced by the appellant, which would tend to show that respondent was guilty of contributory negligence. Nothing had happened during the trip, so far as the evidence shows, which indicated in any manner that Layton was not driving his machine in a proper and careful manner up to the time of the accident. There was no reason for respondent, therefore, to be apprehensive of his safety while riding with Layton, or to take any unusual precautions against their running into danger. There was no showing that Strandt knew that Layton was an unlicensed operator.

■ Appellant contends that his instruction No. 2 is a proper one and is supported by the decisions in *Owens* v. *Carmichael's U–Drive Autos, Inc.*, 116 Cal. App. 348 [2 Pac. (2d) 580], and *Moore* v. *Re*, 131 Cal. App. 557 [22 Pac. (2d) 45]. The holding in *Owens* v. *Carmichael's U–Drive Autos, Inc., supra*, that evidence of the fact that the driver did not possess a driver's license was admissible, was applied to a case in which liability was imposed upon an owner who negligently entrusted his automobile to another. (Sec. 76, California Vehicle Act.) The action was for damages for personal injuries sustained by the plaintiff when struck by an automobile belonging to the defendant, on the theory, as alleged in the complaint, that the defendant "negligently let and hired" the automobile to a named man; that defendant "negligently permitted" said man "to drive and operate said automobile upon the highway"; that defendant knew that said man "was not competent to operate" said automobile; and that said man "was not licensed to drive any automobile upon such highway". The court held that under the circumstances the fact that respondent corporation knew that the driver had no driver's license was sufficient to put it upon inquiry as to his competency and it was for the jury to determine under the circumstances whether respondent was negligent in permitting him to drive her car. At the time of this decision it was a violation of the law for an owner

to entrust his car to an unlicensed person. (Sec. 76, California Vehicle Act.) The respondent in that case argued that the fact that it violated section 76 of the California Vehicle Act was immaterial, and cited *Perry* v. *Simeone*, 197 Cal. 132 [239 Pac. 1056], and *Arrelano* v. *Jorgensen*, 52 Cal. App. 622 [199 Pac. 855]. The court held the cited cases were decided prior to the amendment in 1927 of section 63 of the California Vehicle Act and were not determinative, and that this section now requires the examination of all persons applying for licenses, and that an operator's license is no longer merely a means of identification but is in effect a certificate evidencing the fact that the holder has demonstrated his competency, and that the violation of the statute in failing to obtain a license is material. (Citing *Cragg* v. *Los Angeles Trust Co.*, 154 Cal. 663 [98 Pac. 1063]; *Andreen* v. *Escondido Citrus Union*, 93 Cal. App. 182, 183 [269 Pac. 556].) We do not believe this is sufficient authority for holding as a matter of law that evidence of the fact that the operator of an automobile is or is not licensed becomes material in all automobile damage actions, in determining the competency of the driver.

The case of *Moore* v. *Re, supra,* adopted the holding in the case of *Owens* v. *Carmichael's U–Drive Autos, Inc., supra,* and applied it to an action wherein the plaintiff Moore alleged that he was injured in a collision with a truck driven by one Michael Balcovich, defendant and appellant, who was accompanied by his employer, Sam Re, also a defendant and appellant. The court permitted respondent to show, by the testimony of the driver of the truck, that he did not possess an operator's license as required by the California Vehicle Act, with the limitation that it was admitted not as relating to the proximate cause of the injury but was proper to be considered by the jury on the general question of negligence and also as bearing on the ability and qualifications of the driver, and cited as its reasons that the Vehicle Act required that the appellant must be subjected to an examination by the Division of Motor Vehicles as to his qualifications for such a license, including a test of applicant's hearing and eyesight, and his ability to understand highway warnings and direction signs, etc.

We are well aware of the divided authority in other jurisdictions bearing on this question. To some extent, the fol-

lowing cases support appellant's theory: *Correira* v. *Liu*, 28 Hawaii, 145; *McCarry* v. *Center Tp.*, 138 Kan. 624 [27 Pac. (2d) 265]; *Kenyon* v. *Hathaway*, 274 Mass. 47 [174 N. E. 463, 73 A. L. R. 156]; *L'Esperance* v. *Sherburne*, 85 N. H. 103 [155 Atl. 203]. To the contrary we find the following: *Lufty* v. *Lockhart*, 37 Ariz. 488 [295 Pac. 975]; *DeVite* v. *Connecticut Co.*, 112 Conn. 670 [151 Atl. 320]; *Opple* v. *Ray*, 208 Ind. 450 [195 N. E. 81]; *Schuster* v. *Gillispie*, 217 Iowa, 386 [251 N. W. 735]; *Ross* v. *Pennsylvania R. Co.*, 106 N. J. Law, 536 [148 Atl. 741].

In *Pritchard* v. *Collins*, 228 Ky. 635 [15 S. W. (2d) 497], the court held that evidence of the failure of the driver of a truck to be licensed was regarded as wholly immaterial, it having no bearing upon the negligence of plaintiff, who was riding on the truck. Also, in *DeVite* v. *Connecticut Co.*, *supra*, the court said the operator's negligence was to be determined by the facts existing at the time of the accident, and that whether the operator had a license was a wholly immaterial consideration.

In *Cruzen* v. *Wilcox*, 20 Cal. App. (2d) 728 [67 Pac. (2d) 709], the court commented on the holding in *Moore* v. *Re*, *supra*, and said: "There appears to be no refusal of the court to receive evidence on the subject of defendant's possession of a license. The consideration we have given this . . . is not to be taken as indicating that we believe the presence or absence of a driver's license to be of any moment in the case, not even to the limited extent approved in *Moore* v. *Re*, *supra*. The record before us does not require an expression of our opinion on the matter."

In the case of *Page* v. *Mayors*, (1923) 191 Cal. 263 [216 Pac. 31], our Supreme Court decided this question adversely to appellant's contention and contrary to the cases cited by appellant. This was an action in which the plaintiff sought to recover damages for a head-on collision occurring upon a public highway, between an automobile operated by defendant's agent and plaintiff's automobile. The defendant appealed from a judgment against him and claimed it to be erroneous for the reason that the evidence showed that the plaintiff did not have an operator's license at the time of the collision. In disposing of the question the court held: "With reference to the question of the operator's license, it is sufficient to say that it had nothing to do with

the collision. We are not disposed to hold that the presence of the plaintiff upon the highway was unlawful and that this was thus a proximate cause of his injuries or to deprive him of the right of recovery.''

It is true that the legislature has enlarged upon the requirements necessary to obtain a license since the decision in this case. The Vehicle Code now requires that the operator be examined as to certain qualifications. However, it was then unlawful for any person to drive a motor vehicle upon the highway unless licensed. (Stats. 1919, chap. 147, p. 223, sec. 24a.)

In some states the legislatures, by special enactments, have precluded a recovery by an unlicensed operator. (*Atwood* v. *Crowe & Co.*, 110 Conn. 288 [147 Atl. 871] ; *Card* v. *Bissing*, 114 Conn. 71 [157 Atl. 644].) We find no expression in our statutes to this effect but on the contrary the legislature has been very liberal in its protection, in civil actions, of unlicensed operators where their licenses have been revoked or suspended. Section 754 of the Vehicle Code provides: ''No record of the suspension or revocation of an operator's or chauffeur's license or of a nonresident's driving privilege by the department, nor any testimony of or concerning or produced at the hearing terminating in such suspension or revocation, shall be admissible as evidence in any court in any civil action.'' Section 755: ''No record of the conviction of any person for any violation of this code, nor any testimony of or concerning or produced at the trial terminating in such conviction, shall be admissible as evidence in any court in any civil action.''

It would seem unjust to a competent operator, who has successfully passed the required examination and might well inadvertently allow his operator's license to expire, and who may have an automobile accident and suffer injury and as a result of which may rightfully have a cause of action for negligence against the other driver, to be confronted with an instruction that by reason of his lack of a license there is a *prima facie* case of his lack of qualification to operate an automobile or that he was incompetent. And it might well be that the defendant in such action may have had his license revoked for good and sufficient reasons. Plaintiff under the sections above referred to would be precluded from producing the record or testimony of his incompetency.

The weight of authority, as we see it, is that the operator's negligence is to be determined by the facts existing at the time of the accident, and whether the operator had a license to operate an automobile under the laws of this state is immaterial unless there is some causal relationship between the injuries and the failure to have a license or the violation of the statute in failing to have one.

A nonresident, over 21 years of age, having in his immediate possession a valid operator's license issued to him in his home state or county may operate a motor vehicle in this state for one year without obtaining a license hereunder, and a nonresident whose home state or county does not require the licensing of operators may operate a foreign vehicle owned by him for 30 days under certain circumstances, without obtaining a license in this state. (Sec. 252, Vehicle Code.) Can it be said that the mere failure of the operator in an accident under these circumstances, to have a license under the laws of this state subjects him to a *prima facie* showing that such driver is incompetent? We think not. If the lack of an operator's license is a *prima facie* showing of incompetency and lack of qualifications of a driver, then the reverse rule should be true that the possession of a license under the laws of this state is *prima facie* evidence of the competency and qualifications of a driver. But we find in *Carr v. Stern*, 17 Cal. App. 397 [120 Pac. 35], that evidence showing the defendant's chauffeur was a capable, efficient and careful driver and bore a reputation as such was wholly immaterial, the question in issue in such cases being not as to the general character or reputation of the driver, but whether, on the occasion of the accident, he was negligent.

Considering the fact that the trial court gave defendant's instruction No. 2, which was clearly erroneous, together with instruction No. 4, which it found not to be applicable, we believe the trial court did not abuse its discretion in granting respondent's motion for a new trial on the grounds stated.

The order appealed from is affirmed.

MARKS, J., Concurring.—I concur.

In concurring I wish to place emphasis on that phase of the case involving instruction numbered two in the foregoing opinion.

That instruction in effect told the jury that the fact that Kenneth Layton had no operator's license was *prima facie* evidence of his incompetence as a driver. That instruction should not have been given. The competency of Layton as a driver was entirely immaterial to the issues of the case. An incompetent driver may be careful and prudent at the time and place of an accident. A competent driver may be guilty of negligence that proximately caused an accident. (*Power* v. *Crown Stage Co.*, 82 Cal. App. 660 [256 Pac. 457].) In this case the sole questions to be decided in the trial court were: Was Layton guilty of negligence that was the proximate or concurring cause of young Strandt's injury, and, was defendant guilty of negligence that was the proximate or concurring cause of these injuries? Contributory negligence of plaintiff was eliminated by the evidence. The answers to these questions should have been found in the evidence showing the conduct of the parties at the time and place of the collision and not upon the evidence of the competency or incompetency of either driver.

The instruction was worse than meaningless unless it was intended to permit the jury to infer negligence and proximate cause on the part of Layton from the fact that he had no operator's license. If such an inference can be drawn, a plaintiff would only have to prove his damage and that a defendant driver was unlicensed to make out a *prima facie* case. If such inferences be permitted the converse should be true and the fact that a driver was licensed would be evidence of his competency, his lack of negligence and lack of proximate cause. Therefore, the possession of an operator's license by a defendant would be evidence that he was not negligent at the time and place of the accident. Under such a theory, evidence that a driver was licensed would support a judgment in his favor even though all the evidence of his conduct at the time of the accident showed him alone guilty of negligence that proximately caused it. I cannot subscribe to any such doctrine.

The instruction given requires the trier of fact to infer from the fact that Layton was unlicensed, (1) that he was incompetent; (2) that from such incompetency he was negligent at the time and place of the accident; (3) that such negligence was the proximate cause of the accident. There is no rule of law that permits such piling of inference on

inference nor any rule drawn from experience that would justify it. The reasonable inferences to be drawn from the fact that a driver is unlicensed should be (1) that he has carelessly failed to apply for a license; (2) that he has carelessly permitted his license to expire from lapse of time without securing a new one; or (3) that his license has been suspended or revoked. Evidence supporting this latter inference is not admissible in a civil suit. (Sec. 754, Vehicle Code.) I cannot see how negligence and proximate cause can be predicated on any such inferences.

If it should be assumed that the lack of an operator's license justifies the inference of the lack of competency of a driver, still the instruction should not have been given. In this kind of a case the courts are not interested in the competency or incompetency of a driver but only in his actions at the time and place of the accident. The question of his competency or incompetency is wholly immaterial to the questions at issue, namely, negligence and proximate cause. This rule has long been established in California.

In the case of *Towle* v. *Pacific Imp. Co.*, 98 Cal. 342 [33 Pac. 207], the plaintiff sought to recover damages for the death of his wife alleged to have been caused by the negligence of defendant's servant in causing or permitting a team of horses to run over her. The trial court permitted defendant to prove that its employee "was a good first-class driver, careful in handling horses, and that during the four years he had been in the employ of defendant, he had never been guilty of any mismanagement or carelessness in the conduct or care of the team". The judgment in favor of defendant was reversed because of the error in admitting this evidence. The Supreme Court held that the question of liability could only be decided on evidence of the driver's actions at the time and place of the accident and not on evidence of his character, competency or experience.

In the case of *Cunningham* v. *Los Angeles Ry. Co.*, 115 Cal. 561 [47 Pac. 452], a father brought suit for damages caused by the death of his infant son who was injured by one of defendant's cars. In considering the question now before this court, it was there said:

"The jury were instructed that, in determining whether the defendant was negligent in not stopping its car so as to avoid the injury, they had the right to take into considera-

tion the fact that the motorman 'had only been at work about twelve days, according to his own testimony, and was a new hand on the road'. . . .

"It is objected that the instruction was erroneous, as submitting to the jury an element which could have no competent bearing upon the question whether defendant was guilty of the degree of negligence with which it was chargeable under the circumstances of the case; and this objection must, we think, be sustained.

"Defendant was responsible to plaintiff for a want of ordinary care only, and whether it was in the exercise of such care was to be determined from a consideration of what actually occurred at the time of the alleged negligent act, regardless of any fact affecting the general character of the servant for skill or proficiency in the discharge of his duty. The question was, Did the servant exercise ordinary care to avoid the injury? If he did, the plaintiff could not recover, no matter how wanting the servant may have been in general competency; while if he did not exercise such care, plaintiff was entitled to recover, even if the servant possessed the utmost degree of efficiency and skill in the performance of his duty. The sole question, therefore, was, What was the conduct of the servant at the time? and this to be unembarrassed by any consideration of his general qualifications."

The same question was before the Supreme Court in the case of *Langford* v. *San Diego Elec. Ry. Co.*, 174 Cal. 729 [164 Pac. 398], where it was said:

"Among other instructions, the court gave the following: 'You are further instructed that it is and was the duty of the defendant corporation to employ competent and careful persons to manage its street-cars, and that it was and is the duty of the motorman in charge of the street-cars of the defendant to exercise proper care, and keep a proper lookout, in order to avoid, if possible, all accidents and injury, and the defendant would be liable for any injury proximately caused by its failure in these respects.' The court refused to comply with the defendant's request to instruct the jury: 'Plaintiffs do not here complain that the motorman on defendant's west-bound street-car was incompetent or inexperienced, and the only question for you to consider with reference to him is whether on the occasion of the accident he acted with the care and prudence which a reasonably prudent man under

the circumstances would have exercised.' The appellant assigns as error the giving of the one and the refusal to give the other instruction. These assignments are well taken. The question of the competency or incompetency of the motorman was not an issue, nor could it have been made an issue, in the case. The great weight of authority supports the rule that in actions of this kind the competency of the person claimed to have acted negligently, or his reputation for care, is not a subject of inquiry. . . . Under instruction 13, the jury was authorized to hold the defendant liable because it had employed an incompetent motorman, even though the evidence of the facts surrounding the accident may not have been sufficient, in and of itself, to show that the motorman had failed to exercise due care. The vice of the instruction is not remedied by the concluding words that 'defendant would be liable for any injury proximately caused by its failure in these respects'. The argument is that the mere employment of an incompetent motorman could not proximately cause the injury, if the motorman was not negligent on the particular occasion. But the answer to this suggestion is that the natural effect of testimony of incompetency is to lead the jury to infer that the person whose conduct is in question failed to act properly at the time and in the very matter under investigation. (Wigmore on Evidence, sec. 65.) The error is emphasized by the court's refusal to give the instruction requested by the appellant. The requested charge was designed to limit the jury, on the question of the defendant's negligence, to an examination of the conduct of the motorman at the very time in controversy. As we have seen, the defendant was entitled to have the inquiry so limited.''

The cases of *Spear* v. *United Railroads of San Francisco*, 16 Cal. App. 637 [117 Pac. 956]·, *Carr* v. *Stern*, 17 Cal. App. 397 [120 Pac. 35] , *Power* v. *Crown Stage Co., supra*, and *Hanchett* v. *Wiseley*, 107 Cal. App. 230 [290 Pac. 311], adhere to the same doctrine. The only vehicle case cited to the contrary is *Moore* v. *Re*, 131 Cal. App. 557 [22 Pac. (2d) 45]. In view of the firmly settled rule announced in the foregoing cases, which are not considered in the Moore case, I cannot agree with the conclusions there reached. The following cases lend support to this conclusion: *Shimoda* v. *Bundy*, 24 Cal. App. 675 [142 Pac. 109] ; *Roos* v. *Loeser*, 41 Cal. App. 782 [183 Pac. 204] ; *Arrelano* v. *Jorgensen*, 52 Cal.

App. 622 [199 Pac. 855]; *Page* v. *Mayors,* 191 Cal. 263 [216 Pac. 31].

The case of *Owens* v. *Carmichael's U-Drive Autos, Inc.,* 116 Cal. App. 348 [2 Pac. (2d) 580], contains nothing contrary to the conclusion reached by this court. The defendant in that case was engaged in the business of renting automobiles without drivers. It rented a car to Max Watson, an unlicensed driver, who negligently injured plaintiff. Defendant's agent knew that Watson had no operator's license. The District Court of Appeal held that this knowledge was sufficient to put defendant on its inquiry as to the competency of Watson and that instead of instructing a verdict for defendant the trial court should have left to the jury the determination of the question of whether or not defendant was negligent in permitting Watson to drive the automobile on the public highways without being accompanied by a licensed driver. This conclusion is logical but it is far from holding that the lack of an operator's license is evidence of that driver's incompetence, his negligence and that such negligence was the proximate cause of an accident.

In my opinion it was error to give the instruction here discussed. The trial court by granting the motion for new trial impliedly found that this error was prejudicial. In view of the facts of this case, that conclusion should not be disturbed here. (*Olinger* v. *Pacific Greyhound Lines,* 7 Cal. App. (2d) 484 [46 Pac. (2d) 774].)

Barnard, P. J., concurred in the foregoing opinions.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 26, 1939.