Filed 3/29/13  P. v. Sedej CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>JOHN MICHAEL SEDEJ,<br><br>     Defendant and Appellant. | D056955, D057783<br><br><br>(Super. Ct. No. SCD207881) |

CONSOLIDATED APPEALS from a judgment of the Superior Court of San Diego County, Melinda J. Lasater, Judge.  Affirmed in part, reversed in part.

A jury convicted John Michael Sedej of committing gross vehicular manslaughter while intoxicated, causing the death of Nancy Ramirez (Pen. Code, § 191.5, subd. (a); count 1); driving under the influence of alcohol causing bodily injury (Veh. Code, § 23153, subd. (a); count 2); and, driving while having a blood alcohol level of 0.08 percent or more causing bodily injury (Veh. Code, § 23153, subd. (b); count 3).  It found the following allegations to be true:  While Sedej was driving, he proximately caused

bodily injury or death to more than one victim, to wit, Patricia Ramirez and Maria Elena Ramirez,[1] in the commission of counts 1, 2 and 3 (Veh. Code, § 23558); he personally inflicted great bodily injury on Nancy in the commission of counts 2 and 3 (Pen. Code, § 12022.7, subd. (a)); and he drove with a blood alcohol concentration of 0.15 percent or more in the commission of counts 2 and 3 (Veh. Code, § 23578). As to count 1, the jury found not true that Sedej personally inflicted great bodily injury on Patricia. (Pen. Code, § 12022.7, subd. (a).) The court sentenced Sedej to an aggregate term of six years, staying the sentence on counts 2 and 3 under Penal Code section 654.[2]

Sedej contends: (1) the convictions for counts 2 and 3 should be reversed because both are necessarily included offenses of the conviction in count 1; (2) there was insufficient evidence to support a conviction in count 1; (3) his state and federal constitutional due process and confrontation rights were violated by the court's exclusion of evidence; 4) the court erroneously declined his request to instruct the jury regarding unanimity; (5) the prosecutor committed prejudicial misconduct during closing arguments; and (6) the court erroneously denied him probation. We reverse the true findings on the Penal Code section 12022.7, subdivision (a) enhancements as to Nancy in counts 2 and 3. In all other respects, we affirm the judgment.

---

[1]     Nancy, Patricia, and Maria Elena share a common last name; therefore, we refer to them by their first names to avoid confusion.

[2]     In June 2010, Sedej filed a notice of appeal (D057783) of the trial court's restitution order in the same underlying case. That appeal was consolidated with the present appeal by order in August 2010, but Sedej does not challenge the restitution order in his appellate briefs.

FACTUAL BACKGROUND

*Prosecution Case*

At approximately 1:15 a.m. on July 13, 2007, Patricia was driving a Ford Expedition vehicle with her sister, Maria Elena, and her niece, Nancy, as passengers. Patricia stopped at a red light at the intersection of La Jolla Village Drive and Genesee Avenue in San Diego. When the light turned green, Patricia resumed driving eastbound on La Jolla Village Drive. Just then, a vehicle heading southbound on Genesee crashed into the driver's side of Patricia's vehicle. Nancy died in the collision. Patricia and Maria Elena suffered cuts and bruises and required hospitalization.

Alexandra Rommell and David Villegas were in a vehicle going eastbound on La Jolla Village Drive, when they saw Sedej run a red light and crash into Patricia's vehicle. They called 911, checked on the victims in both cars, and waited until help arrived.

San Diego Police Department Detective Suzanne Huntington spoke to Sedej at the hospital at around 3:45 that morning, after administering warnings under *Miranda v. Arizona* (1966) 384 U.S. 436. She asked him how fast he was driving at the time of the collision and he said, "[A]bout 30 to 40 miles per hour." She asked him, "Anything else you want to tell me about tonight [*sic*]?" He answered, "I should not have had that glass of wine."

San Diego Police Department Officer Michael Stone, the lead investigator, arrived at the scene at approximately 1:53 a.m. He saw Sedej's Acura vehicle, and firemen trying to remove two women from inside the Expedition. A corpse was on the street. Officer

3

Stone determined Sedej had run a red light in violation of Vehicle Code section 21453, subdivision (a), causing the collision. Officer Stone testified that under the law, when the traffic light is red in the direction a motorist is travelling, the motorist must stop.

San Diego Police Department Criminalist Janine Miller testified she tested two samples of Sedej's blood drawn at 3:18 a.m. His blood alcohol content measured 0.1975 and 0.1983 percent. Responding to a hypothetical, Miller testified that a 180-pound male would have had to consume an average of nine drinks to reach that blood alcohol level. That person would be unable to safely operate a motor vehicle.

Accident reconstruction specialist Ernest Phillips prepared two reports. In the first report, he concluded that at the moment of impact, Sedej's Acura and the Expedition were travelling at 60.6 and 26 miles per hour respectively. Phillips, however, admitted he had erroneously identified the Acura's point of rest. He performed a second reconstruction test and changed the Acura's point of rest, and revised the speed of impact for the Acura to 20.6 miles per hour and 19.8 miles per hour for the Expedition.

*Defense Case*

Three accident reconstructionists testified for the defense. William Haight estimated the speed at the point of impact was between 45 and 50 miles per hour for Sedej's Acura, and 25 to 30 miles per hour for the Expedition. Eugene Vanderpol estimated the speeds at the moment of impact were 46 miles per hour for the Acura, and 26 miles per hour for the Expedition. Joseph Awad testified his measurements of the vehicle's position at rest differed from that of the People's expert.

4

DISCUSSION

I.

Sedej contends his convictions for driving under the influence of alcohol causing bodily injury and driving with a blood alcohol level of 0.08 percent or greater causing bodily injury should be reversed because they both are necessarily included offenses of his conviction on count 1 for gross vehicular manslaughter while intoxicated.

The California Supreme Court in *People v. McFarland* (1989) 47 Cal.3d 798 considered the issue of "whether separate punishment is permissible where a defendant, in a single incident, commits vehicular manslaughter as to one victim . . . and drunk driving resulting in injury to a separate victim." It held, "[W]here, as here, a defendant commits vehicular manslaughter with gross negligence—an act of violence against the person—he may properly be punished for injury to a separate individual that results from the same incident." (*Id*. at pp. 803-804.) Moreover, this court has ruled that "it is generally appropriate that a defendant be subject to greater punishment for committing an offense if his or her commission of that offense causes injuries to multiple persons." (*People v. Weaver* (2007) 149 Cal.App.4th 1301, 1331.) *McFarland* is controlling here; therefore, it was not error to sentence Sedej on count 1 relating to Nancy's death, and counts 2 and 3 relating to injuries suffered by different victims, Patricia and Maria Elena.

Sedej further contends we should strike the accompanying great bodily injury enhancements on counts 2 and 3 as to Nancy. We agree. "Under [Penal Code] section 12022.7, subdivision (g), when a defendant is convicted of murder or manslaughter, that

5

conviction may not be enhanced with the injury the victim of the murder or manslaughter necessarily suffered. However, injuries caused to *other* victims of the defendant's conduct may serve as enhancements under [Penal Code] section 12022.7." (*People v. Julian* (2011) 198 Cal.App.4th 1524, 1530.)[3] During the pendency of this appeal, another court in this District decided *People v. Cook* (March 19, 2013, E054307) ___ Cal.App.4th ___ [2013 WL 1120653], which held that "imposition of a [Penal Code] section 12022.7, subdivision (a) enhancement with respect to a victim for whom the defendant has already been convicted of manslaughter is barred by the express provision of [Penal Code] section 12022.7, subdivision (g)." In light of the fact Nancy died in the collision, we reverse the true finding on the great bodily injury enhancements as to her on counts 2 and 3.

## II.

Sedej contends there was insufficient evidence to show he acted with gross negligence to support his conviction for gross vehicular manslaughter while intoxicated. He concedes, "The evidence in this matter established that [he] was driving under the influence of alcohol and may caused [*sic*] the collision by running a red light." Nonetheless, he maintains, "[T]here were no overall circumstances related to [his] intoxication or manner of driving that supported a conclusion that [he] acted with a conscious indifference to the consequences of his actions."

---

3     The People agree on this point of law but, with no explanation, conclude it does not apply to Nancy.

The test of sufficiency of the evidence is whether, reviewing the whole record in the light most favorable to the judgment below, substantial evidence is disclosed such that a reasonable trier of fact could find the essential elements of the crime beyond a reasonable doubt.  (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)  Substantial evidence is that evidence which is "reasonable, credible, and of solid value."  (*Ibid*.)  An appellate court must "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."  (*People v. Reilly* (1970) 3 Cal.3d 421, 425.)  An appellate court must not reweigh the evidence (*People v. Culver* (1973) 10 Cal.3d 542, 548), reappraise the credibility of the witnesses, or resolve factual conflicts, as these are functions reserved for the trier of fact.  (*In re Frederick G.* (1979) 96 Cal.App.3d 353, 367).

Furthermore, an appellate court can reject evidence accepted by the trier of fact only when the evidence is inherently improbable and impossible of belief.  (*People v. Maxwell* (1979) 94 Cal.App.3d 562, 577.)  "Where the circumstances support the trier of fact's finding of guilt, an appellate court cannot reverse merely because it believes the evidence is reasonably reconciled with the defendant's innocence."  (*People v. Meza* (1995) 38 Cal.App.4th 1741, 1747.)

Penal Code section 191.5 subdivision (a) provides:  "Gross vehicular manslaughter while intoxicated is the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section 23140, 23152, or 23153 of the Vehicle Code, and the killing was either the proximate result of the commission of an unlawful act, not amounting to a felony, and with gross negligence, or

7

the proximate result of the commission of a lawful act that might produce death, in an unlawful manner, and with gross negligence."[4]

Although gross negligence cannot be shown by the mere fact that the defendant drove a motor vehicle while under the influence and broke the traffic laws (*People v. Hansen* (1992) 10 Cal.App.4th 1065, 1075), it may be shown from all the relevant circumstances, including the level of intoxication, the manner of driving, "and any other relevant aspects of [the defendant's] conduct." (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1207.)

"Gross negligence is the exercise of so slight a degree of care as to raise a presumption of conscious indifference to the consequences. [Citation.] 'The state of

---

[4] Vehicle Code section 23152 provides: "(a) It is unlawful for any person who is under the influence of any alcoholic beverage . . . to drive a vehicle. [¶] (b) It is unlawful for any person who has 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle. . . . [¶] . . . [¶] In any prosecution under this subdivision, it is a rebuttable presumption that the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test within three hours after the driving."

Vehicle Code section 23153 provides: "(a) It is unlawful for any person, while under the influence of any alcoholic beverage . . . to drive a vehicle and concurrently do any act forbidden by law, or neglect any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver. [¶] (b) It is unlawful for any person, while having 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle and concurrently do any act forbidden by law, or neglect any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver. [¶] In any prosecution under this subdivision, it is a rebuttable presumption that the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test within three hours after driving. [¶] (c) In proving the person neglected any duty imposed by law in driving the vehicle, it is not necessary to prove that any specific section of this code was violated."

mind of a person who acts with conscious indifferences to the consequences is simply, "I don't care what happens." ' [Citation.] The test is objective: whether a reasonable person in the defendant's position would have been aware of the risk involved." (*People v. Bennett* (1991) 54 Cal.3d 1032, 1036.)

"[A] driver's level of intoxication is an integral aspect of the 'driving conduct.' A high level of intoxication sets the stage for tragedy long before the driver turns the ignition key. 'There is a very commonly understood risk which attends every motor vehicle driver who is intoxicated. [Citation.] One who willfully consumes alcoholic beverages to the point of intoxication, knowing that he thereafter must operate a motor vehicle, thereby combining sharply impaired physical and mental faculties with a vehicle capable of great force and speed, reasonably may be held to exhibit a conscious disregard of the safety of others. The effect may be lethal.' " (*People v. Bennett*, *supra*, 54 Cal.3d at p. 1038.)

Here, Sedej's blood alcohol content two hours after the collision was 0.19 percent. Four individuals testified he did not stop at the red light as required by statute. In fact, he admitted to police the morning of the collision that he was driving at approximately 40 miles per hour when he collided with the Expedition. Such a rate of speed was unreasonable under the circumstances. We conclude this evidence is sufficient to support the conviction for gross vehicular manslaughter while intoxicated.

III.

Sedej contends the trial court erroneously refused to allow him to impeach Patricia with evidence related to her immigration status, how she learned to drive, and her

9

possession of a false Mexican driver's license. He further contends his cross-examination of her was less effective than it might have been if the court had permitted him to question her specifically regarding her use of a false social security number. Accordingly, Sedej contends his constitutional rights to due process and confrontation under the federal and state Constitutions were violated because Patricia's credibility was crucial in this case, and "[t]he excluded evidence would have cast a different light on Patricia's inconsistent statements at trial."

A. *Applicable Law*

Evidence Code section 352 provides, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." It "empowers the trial judge to bar impeachment of a witness by reference to collateral matter." (*People v. Blackburn* (1976) 56 Cal.App.3d 685, 693.) Application of the ordinary rules of evidence does not impair a defendant's constitutional right to present a defense. (*People v. Boyette* (2002) 29 Cal.4th 381, 427-428.) Although completely excluding evidence of an accused's defense theoretically could infringe on his right to present a defense, excluding defense evidence on a minor or subsidiary point does not. (*Ibid.*)

The trial court must weigh the probative value against "undue prejudice," not just prejudice. For purposes of analysis, " 'prejudicial' is not synonymous with 'damaging,' but refers instead to evidence that ' "uniquely tends to evoke an emotional bias against

10

defendant" ' without regard to its relevance on material issues."  (*People v. Kipp* (2001) 26 Cal.4th 1100, 1121.)

" 'The test of relevance is whether the evidence tends "logically, naturally, and by reasonable inference" to establish material facts such as identity, intent, or motive.' [Citation.]  In determining the credibility of a witness, the jury may consider any matter that has a tendency in reason to prove or disprove the truthfulness of his testimony at the hearing, including but not limited to: a witness's character for honesty or veracity or their opposites; the existence or nonexistence of a bias, interest, or other motive; his attitude toward the action in which he testifies or toward the giving of testimony; and his admission of untruthfulness.  [Citation.]  Past criminal conduct involving moral turpitude that has some logical bearing on the veracity of a witness in a criminal proceeding is admissible to impeach, subject to the court's discretion under Evidence Code section 352."  (*People v. Harris* (2005) 37 Cal.4th 310, 337.)

A "trial court's exercise of discretion in admitting or excluding evidence is reviewable for abuse [citation] and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice."  (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

B.  *Excluded Testimony About Patricia's Immigration Status and Driving Skills*

Sedej moved in limine to admit evidence regarding Patricia's status as an undocumented immigrant because it tended to show "why it was that she would be willing or able to try to claim that she was not the person at fault at the scene . . . because

11

she feared the possibility of adverse immigration consequences." He also sought to admit evidence regarding how she learned to drive: "[I]t's relevant to whether or not she's capable of operating the motor vehicle and whether or not she's aware of what the laws of the road are basically. [¶] I mean this is a woman who was taught to drive in a parking lot . . . . She never took any sort of test to obtain a driver's license, and that's relevant. The fact that she never was examined on the basic rules of the road." Without citation, he also claimed that her possession of a Mexican driver's license pointed to her moral turpitude.

The trial court excluded the challenged evidence: "I'm definitely excluding how she learned to drive . . . her immigration status, and the identification documents. I don't believe they are particularly probative. I think that they're extremely prejudicial. I think that, frankly, there is prejudice which exists to [someone] who is here illegally. I think that there is prejudice in our community against somebody who is driving a vehicle, from Mexico, who is not licensed here."

Sedej claims on appeal that at trial he did not seek to introduce evidence regarding Patricia's immigration status "solely for the purpose of showing that Patricia was in the country illegally . . . [but] in conjunction with evidence that [she] possessed a fake Mexican driver's license and used a fake social security number to obtain employment for the purpose of impeaching [her] credibility."

Sedej further claims that "information related to how Patricia learned to drive and her lack of a valid license were [*sic*] relevant to [her] knowledge or lack of knowledge of the rules of the road. That knowledge was particularly relevant because [she] was from

12

Mexico and, as explained by defense counsel, the rules of the road pertaining to stopping at red lights in Mexico differed from rules governing red lights in California. Mexican law contains a provision that permits a driver to proceed through a red light between the hours of 11:00 p.m. and 5:00 a.m. once the driver checks for oncoming traffic and determines it is safe to proceed." Accordingly, he claims: "The trial court erred by excluding this relevant evidence tending to show that Patricia was the likely cause of the collision."

Here, the trial court found the danger of undue prejudice to the prosecution in introducing evidence of Patricia's status as an undocumented immigrant substantially outweighed the probative value. We conclude the court did not abuse its discretion. It remains true that the issue of illegal immigration into the United States is the subject of intense debate and the topic provokes strong passions on all sides of the issue. Neither party has provided this court with any published case law establishing that illegal immigration is a crime of moral turpitude. Our own research has not found any case law on this question. Assuming arguendo that illegal immigration is a crime of moral turpitude, we conclude that on these facts the trial court did not err in precluding Sedej from questioning Patricia on her immigration status.

Regarding the matter of how Patricia learned to drive, such evidence would have required an undue consumption of time to establish what Mexican law permits regarding stopping or moving at red lights at certain times, and Patricia's knowledge of those laws. Moreover, it is unclear that, even if she had such knowledge, she acted on it in violation of California laws to cause the collision. Sedej, not Patricia, ran the red light. In light of

13

the undue consumption of time it would have required to lay a foundation on these relevant questions, we conclude the trial court did not abuse its discretion in excluding evidence regarding how Patricia learned to drive.

C. *Excluded Testimony Regarding Patricia's Mexican Driver's License*

Sedej's counsel argued during in limine proceedings that Patricia had testified in a prior proceeding that she sent money to her brother, who obtained her driver's license from Mexico. She also presented that document to the police following the collision.

The trial court tentatively ruled it would exclude testimony regarding Patricia's driver's license: "I'm looking at [*Strandt v. Cannon* (1938) 29 Cal.App.2d 509], and it is a case that talks about negligence, and there is no such thing as contributory negligence in this charge . . . . Because if it's only being admitted to show contributory negligence, then it's not relevant. If it is being admitted to show that [Patricia] didn't know to stop at the stop sign—because again I still think the pivotal issue is: Stop sign. If she doesn't know to make a full stop at a red light, I'm not sure it does that. So I think the odds are that I may exclude the license status completely." That became the court's final ruling.

In excluding evidence regarding Patricia's Mexican driver's license, the trial court was following established law in California, as well as other states. (See Annot., Lack of Proper Automobile Registration or Operator's License as Evidence of Operator's Negligence (1953) 29 A.L.R.2d 963, 970-976, and cases cited.) Thus, in *Wysock v. Borchers Bros.* (1951) 104 Cal.App.2d 571, 582, the court acknowledged that "[t]he nonpossession of an operator's or chauffeur's license is not of itself proof that a person is an incompetent or a careless driver." Likewise in *Strandt v. Cannon*, *supra*, 29

14

Cal.App.2d 509, 518, the court held that a driver's negligence is to be determined by the facts of the accident, and that whether the driver had a license is immaterial unless there is some causal relationship between the injuries and the failure to have a license.

We conclude Patricia's lack of a valid driver's license is not relevant to the issue of the gross negligence of the driver who caused the collision, unless the absence of the license contributed directly to the injury. In this case, there was no evidence showing that the absence of a license had anything to do with the collision; therefore, such evidence was inadmissible for the purpose of proving negligence, or for any other purpose.

D. *Sanitized Testimony Regarding Patricia's False Social Security Number*

During an Evidence Code section 402 hearing, Patricia admitted providing a false social security number to a work supervisor to obtain employment in the United States. The court required defense counsel to sanitize that information by asking Patricia this precise question at trial, "In May of 2007, did you knowingly provide false information on a W-4 form?" Patricia responded, "yes."

Sedej claims, "As sanitized, the question clearly lost any impact as that false information could have been as insignificant as changing her birth date by one day. Information that Patricia provided a false social security number on the W-4 form would have had a much greater impact on the jury's view of her veracity."

Even though a defendant is entitled to an opportunity for effective cross-examination, he is not entitled to " 'cross-examination that is effective in whatever way, and to whatever extent,' " he might wish. (*Delaware v. Van Arsdall* (1986) 475 U.S. 673,

15

679.) The prospect of introducing evidence of a witness's prior acts of misconduct raises serious problems of proof, unfair surprise, fairness, and efficiency, as well as complicated determinations of when moral turpitude is involved. (*People v. Wheeler* (1992) 4 Cal.4th 284, 297, fn. 7.) Accordingly, courts are admonished to "consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value." (*Id*. at pp. 296-297, fn. omitted.)

For the purpose of impeaching Patricia's credibility, the sanitized question that the court permitted Sedej to ask struck the proper balance between allowing substantial impeachment on the issue of Patricia's honesty, on the one hand, and on the other, avoiding prejudice to her by raising the issue of her social security number, which is a sensitive topic with jurors, and would not be probative on the underlying issue of the cause of the collision. We conclude that the trial court did not err in limiting the evidence.

IV.

Sedej contends his conviction on count 1 must be reversed because the trial court failed to instruct the jury they must unanimously agree on which of the acts he committed satisfied the second prong of Penal Code section 191.5, subdivision (a).

As noted, Penal Code section 191.5, subdivision (a) provides that the crime of gross vehicular manslaughter while intoxicated is committed when the defendant commits these two prongs: (1) drives a vehicle in violation of Vehicle Code sections 23140, 23152, or 23153, and (2) engages in gross negligence while committing an unlawful act not amounting to a felony, or a lawful act that might produce death.

16

Regarding the first prong of the Penal Code section 191.5 offense, the prosecution's theory was that Sedej violated Vehicle Code section 23152, which makes it unlawful for a person to drive (1) while under the influence of alcohol (Veh. Code, § 23152, subd. (a)), or (2) with a blood alcohol level of at least 0.08 percent (Veh. Code, § 23152, subd. (b)).  Regarding the second prong of the Penal Code section 191.5 offense, the prosecution's theory was that Sedej committed one or more of the following unlawful acts with gross negligence: failing to stop at a red light (Veh. Code, § 21453); and driving at a speed greater than reasonable or prudent under the conditions (Veh. Code, § 22350).  The People also alleged he drove without reasonable care and caution.  This theory was reflected in instructions to the jury with CALCRIM Nos. 590 and 595.

A jury verdict must be unanimous in a criminal case.  (See Cal. Const., art. I, § 16; *People v. Russo* (2001) 25 Cal.4th 1124, 1132 (*Russo*).)  Additionally, the jurors must agree unanimously the defendant has committed one specific crime.  (*Russo*, at p. 1132.)  Therefore, "[a]s a general rule, when violation of a criminal statute is charged and the evidence establishes several acts, any one of which could constitute the crime charged, either the state must select the particular act upon which it relied for the allegation of the information, or the jury must be instructed that it must agree unanimously upon which act to base a verdict of guilty."  (*People v. Jennings* (2010) 50 Cal.4th 616, 679.)  The unanimity requirement " 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.' "  (*Russo*, at p. 1132.)

17

As explained in *Russo*, "The key to deciding whether to give the unanimity instruction lies in considering its purpose. The jury must agree on a 'particular crime' [citation]; it would be unacceptable if some jurors believed the defendant guilty of one crime and other jurors believed [the defendant] guilty of another. But unanimity as to exactly how the crime was committed is not required. Thus, the unanimity instruction is appropriate 'when conviction on a single count could be based on two or more discrete criminal events,' but not 'where multiple theories or acts may form the basis of a guilty verdict on one discrete criminal event.' [Citation.] In deciding whether to give the instruction, the trial court must ask whether (1) there is a risk the jury may divide on two discrete crimes and not agree on any particular crime, or (2) the evidence merely presents the possibility the jury may divide, or be uncertain, as to the exact way the defendant is guilty of a single discrete crime. In the first situation, but not the second, it should give the unanimity instruction." (*Russo*, *supra*, 25 Cal.4th at p. 1135.)

Closer to the facts of this case, in *People v. Mitchell* (1986) 188 Cal.App.3d 216, this court concluded the jury did not need to unanimously agree whether the defendant committed the offense of driving under the influence by driving at an unsafe speed or by engaging in a speed contest. We reasoned that the charges of violating the basic speed law and engaging in a speed contest were merely alternative theories to prove a necessary element of the single act of drunk driving. (*Id*. at pp. 221-222; accord, *People v. Leffel* (1988) 203 Cal.App.3d 575, 586-587 [jury need not unanimously agree whether defendant committed vehicular manslaughter by exceeding maximum speed limit, driving

18

faster than posted limit or than safe, driving recklessly, or failing to drive on right half of roadway].)

Here, the unanimity instruction was not required because the evidence reflected a single criminal event of driving while intoxicated, and the jury needed only to unanimously agree that Sedej committed that offense. The jury did not have to agree unanimously on which theory supported a finding of guilt on the second prong. (*People v. Mitchell*, *supra*, 188 Cal.App.3d at pp. 220-222; *People v. Leffel*, *supra*, 203 Cal.App.3d at pp. 586-587.)

V.

Sedej contends the prosecutor denigrated the integrity of defense counsel and experts in several instances of misconduct during closing arguments, thus violating his rights to due process and an impartial jury under the federal and state Constitutions.

A. *Background*

During closing argument, the prosecutor referred to a dispute about the date that defense expert Haight had prepared a report. Defense counsel objected on grounds the prosecutor had misstated the testimony. The court admonished the jury, "[Y]ou're going to have to use the evidence as you recall it."

In another instance of alleged misconduct, the prosecutor told the jury that one of the defense expert's reports contained discrepancies; however, when questioned about it at trial, the expert had said, "[T]his isn't eighth grade. I don't have to show my work." The prosecutor commented about that statement, "Yeah, you're right. This isn't eighth grade math. This is a court of law. And if you guys want to accept it without his work,

19

that's up to you. But there's another person who didn't have to show his work, and that's Bernie Madoff." Defense counsel objected on the basis of "improper argument." The trial court sustained the objection, telling the jury to "disregard the last comment."

Another challenged comment by the prosecutor came when he was showing the jury two photographs and this exchange occurred:

"[Prosecutor]: . . . "This is the world famous [Sydney Opera House] in Australia. It's supposed to be a really nice place. Never been there. This is what it looks like on a normal day. About three weeks before this trial started that's what the [Sydney Opera House] looked like because of dust storms in [Sydney]. You can still see that it's the [Opera House], but it's obscured by dust. That's what the defense is doing in this case, ladies and gentlemen.

"[Defense counsel]: Objection, your Honor. Improper argument.

"The Court: Overruled. Go ahead.

"[Prosecutor]: That's what the defense is doing in this case. They can't accept the eyewitness testimony. . . . So bring in experts, bring in experts, bring in experts to obscure what went on."

"[Defense counsel]: Improper argument, your Honor."

During a side bar, the court ruled the prosecutor's argument was "not inappropriate to say it creates a red herring. . . . I think so far it's okay. [¶] I do agree that there are times when it can go over the line. I don't think we're there yet."

Another challenged statement was the prosecutor's joke about a company that was hiring an accountant. In the joke, the first applicant was asked, "What is two plus two?"

20

and answered "Five." The second applicant answered the same question with "Four." The third applicant replied, "What would you like it to be?" That applicant was told, "You're hired." The prosecutor added, "And the reason I tell you that joke is because it applies to accounting as well as it does to reconstruction." Defense counsel did not object. The prosecutor proceeded to discuss the different experts' reconstruction of the collision scene.

B. *Applicable law*

Generally, a defendant cannot raise a prosecutorial misconduct claim on appeal unless he first makes an assignment of misconduct at trial, stating the grounds, and on that basis, requests the jury be admonished to disregard the impropriety. (*People v. Samayoa* (1997) 15 Cal.4th 795, 841 (*Samayo*a).)

" ' " '[A] prosecutor is given wide latitude during argument. The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom.' " ' " (*People v. Hill* (1998) 17 Cal.4th 800, 819 (*Hill*).) " '[C]ounsel may not [however,] assume or state facts not in evidence [citation] or mischaracterize the evidence.' [Citation.] 'Whether the inferences the prosecutor draws are reasonable is for the jury to decide.' " (*People v. Harrison* (2005) 35 Cal.4th 208, 249.) "The prosecutor is permitted to urge, in colorful terms, that defense witnesses are not entitled to credence, to comment on failure to produce logical evidence, [and] to argue on the basis of inference from the evidence that a defense is fabricated . . . ." (*People v. Pinholster* (1992) 1 Cal.4th 865, 948.)

21

A prosecutor's intemperate behavior violates the federal Constitution when it comprises a pattern of conduct so egregious that it infects the entire trial with such unfairness as to make the conviction a denial of due process. (*Samayoa*, *supra*, 15 Cal.4th at p. 841.) "A defendant's conviction will not be reversed for prosecutorial misconduct, however, unless it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct." (*People v. Crew* (2003) 31 Cal.4th 822, 839.)

Absent misconduct implicating federal constitutional error, we will not reverse unless it is reasonably probable the result would have been more favorable to the defendant without the misconduct. (See *People v. Cook* (2006) 39 Cal.4th 566, 606, 608.)

C. *Analysis*

We reject the claims of prosecutorial misconduct in this case. Regarding the prosecutor's argument about Haight's report, Sedej did not object on grounds of prosecutorial misconduct, and did not seek an admonition. Rather, the defense objected the prosecutor had misstated the expert's testimony. Sedej has not shown on appeal why the court's instruction to the jury to rely on its recall of the facts was insufficient to cure any prejudice. We conclude the claim is forfeited.

Similarly, the defense forfeited any challenge to the prosecutor's joke about defense experts who adjust their testimony to the needs of their client. The defense failed to object at trial. In any event, that joke was not so extreme that an admonition would not have cured any harm. (*People v. Gionis* (1995) 9 Cal.4th 1196, 1216-1217.)

22

Regarding the prosecutor's reference to Bernie Madoff, the trial court sustained the defense's objection the argument was improper, and admonished the jury to disregard the comment. We conclude this admonition sufficed to cure any jury misconception caused by the prosecutor's statement.

As a substantive matter, the prosecutor's reference to the two photographs of the Sydney Opera House, one clear and the other obscured by dust—aiming to illustrate that defense was obscuring the truth—was no different than argument found proper by the California Supreme Court as summarized in *People v. Cunningham* (2001) 25 Cal.4th 926, 1002-1003. In that case, the court stated, "The prosecutor's remarks . . . would be understood by the jury as an admonition not to be misled by the defense interpretation of the evidence, rather than as a personal attack on defense counsel." (*Id*. at p. 1003.)

We conclude the prosecutor's challenged arguments did not so infect the trial with unfairness as to constitute a denial of due process. Further, it is not reasonably probable Sedej would have received a more favorable outcome absent those statements. This case turned on Sedej's level of intoxication and whether he ran a red light in violation of traffic laws. There was overwhelming evidence on those two points; therefore, any error by the prosecutor was harmless under any standard.

VI.

Sedej contends the trial court erred in denying his request for probation based on its finding he lacked remorse. Sedej concedes that under California Rules of Court, rule 4.414(b)(7), the issue of his remorse was a valid factor the court considered in evaluating his probation request. However, he contends the court abused its discretion and acted

23

arbitrarily in finding he had failed to acknowledge running a red light. Sedej argues, "The record on appeal supports a conclusion that all [he] remembered from the collision was suddenly seeing a vehicle that appeared to be stopped in front on [*sic*] him before the air bags in his vehicle [*sic*]." Therefore, "it was unreasonable for the trial court to expect [him] to confess to running a red light to show he was truly remorseful."

The sentencing hearing in this matter took place over the course of two days. The trial court noted it had read and considered the defense's statement in mitigation and numerous letters submitted on Sedej's behalf. It also listened to recordings of Sedej's jail conversations. The court summarized for Sedej the basis for its belief he was not sufficiently remorseful: "But you made statements like [']I did everything right for 23 years, and this is wrong.['] Implying it was wrong what happened to you. You said [']I was trying to get out of this.['] These are all statements I had you respond to earlier . . . You said, [']it's not right. I don't get some things.['] And this was all after the conviction. After you've had a little time in custody." The court added, "So I have a John Sedej who is remorseful but not because he ran the red light but because of his actions of drinking and driving and that somebody died. . . . I do not believe that you believe that you have caused the crash. I do think you still feel like you have been wronged."

The court denied probation, although it found Sedej was eligible for probation, based on his lack of a prior criminal record, ruling, "Someone died. That's part of the offense. Two other people were seriously injured. Your blood alcohol level was [at 0.19 percent], and you have no explanation for how you got there." The court noted the

24

vulnerability all drivers on the road face from a drunk driver. The court pointed out "[t]he degree of monetary loss to the victim's family is significant."

The sentencing court has broad discretion in determining whether a defendant is suitable for probation. (*People v. Welch* (1993) 5 Cal.4th 228, 233.) " 'All defendants are eligible for probation, in the discretion of the sentencing court [citation], unless a statute provides otherwise.' [Citation.] 'The grant or denial of probation is within the trial court's discretion and the defendant bears a heavy burden when attempting to show an abuse of that discretion. [Citation.]' [Citation.] 'In reviewing [a trial court's determination whether to grant or deny probation,] it is not our function to substitute our judgment for that of the trial court. Our function is to determine whether the trial court's order granting [or denying] probation is arbitrary or capricious or exceeds the bounds of reason considering all the facts and circumstances.' [Citation.] [¶] 'The decision to grant or deny probation requires consideration of all the facts and circumstances of the case.' " (*People v. Weaver* (2007) 149 Cal.App.4th 1301, 1311-1312.) "[O]ne factor in aggravation is sufficient to justify a sentencing choice." (*People v. Robinson* (1992) 11 Cal.App.4th 609, 615, disapproved of on another ground in *People v. Scott* (1994) 9 Cal.4th 331, 353.)

California Rules of Court, rule 4.414 provides criteria for the court to consider in deciding whether to grant or deny probation. It describes a number of factors, related both to the underlying crime and to the defendant. These factors "must be considered by the sentencing judge[.]" (Cal. Rules of Court, rule 4.409.) Among the factors related to the crime that the court considers are "the nature, seriousness, and circumstances of the

25

crime as compared to other instances of the same crime," (Cal. Rules of Court, rule 4.414(a)(1)) and "[w]hether the defendant was an active or a passive participant." (Cal. Rules of Court, rule 4.414(a)(6).)

Here, the same judge presided over the trial and sentencing. She read the probation officer's report recommending denying probation and sentencing Sedej to prison. The record is clear that the court's conclusion that Sedej was not sufficiently remorseful was based on Sedej's own statements in jailhouse recordings and at the sentencing hearing. Further, the lack of remorse was but one factor the court considered in denying probation. Although there were certainly factors favorable to Sedej that the court could have used to support a decision granting probation, there were other factors that supported its determination to deny probation, as noted in its thorough analysis of the applicable factors. We conclude the court did not abuse its discretion in denying Sedej's request for probation.

DISPOSITION

We reverse the true findings on the Penal Code section 12022.7, subdivision (a) enhancements as to Nancy Ramirez in counts 2 and 3.  In all other respects the judgment is affirmed.


                                                                O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


NARES, J.


27